# 22-2911-cv

## United States Court of Appeals

### *for the*

## Second Circuit

EDWARD SHIN,

*Plaintiff-Appellant,*

– v. –

TERRANCE WU,

*Defendant-Appellee,*

VICTORIA WANG, as Trustee of the Richardson Irrevocable Trust,

*Defendant-Trustee-Cross-Defendant-Appellee,*

RICHARDSON IRREVOCABLE TRUST,

*Defendant-Third-Party-Defendant-Appellee,*

DEH-JUNG DEBORAH WANG,

*Defendant-Third-Party-Defendant-
Cross-Defendant-Appellee,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

ROBERT J. BASIL
THE BASIL LAW GROUP, P.C.
*Attorneys for Plaintiff-Appellant*
125 West 31st Street, Suite 19-B
New York, New York 10001
(917) 994-9973

YS2 ENTERPRISES INC, YOUNG K. LEE, MICHEL S. WANG,

*Defendant-Third-Party-Plaintiff-Cross-Defendant-*
*Cross-Claimaint-Appellee,*

DEBORAH WANG DEH-JUNG,

*Defendant,*

MICHAEL S. WANG,

*Defendant-Third-Party-Defendant,*

TERENCE WU,

*Defendant-Third-Party-Defendant-*
*Cross-Defendant.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE
      JURISDICTION .......................................................................1

II.   STATEMENT OF ISSUES PRESENTED ......................................2

III.  STATEMENT OF THE CASE ....................................................3

      (1)   Description of nature of case and relevant procedural history ............3

      (2)   Identification of judge/court below ........................................6

      (3)   Facts relevant to issues submitted for review ...................................6

IV.   SUMMARY OF ARGUMENT...................................................11

V.    ARGUMENT...........................................................................11

      A.    The Standard of Review for this Court of Judge Gold's Grant
            of Summary Judgment is *De Novo*.....................................11

      B.    The Surveillance Video, Expert Report. and Deposition
            Testimony of Dr. William Marletta Established Genuine
            Issues of Material Fact Sufficient to Defeat Summary
            Judgment Below ...............................................................12

      C.    The Record Below Demonstrated that Edward Shin Had
            Established a *Prima Facie* Case of Negligence on the Part of
            the Building Defendants.....................................................18

            1.    The Jury Would be Justified in Finding that the
                  Building Defendants Breached Their Duty to Provide
                  and Maintain a Reasonably Safe Premises for Invitees
                  such as Edward Shin ..............................................18

            2.    The Building Defendants Had Sufficient Notice of the
                  Defective Conditions That Caused Shin's Accident ...............24

      D.    The Court Below Erred By, *Inter Alia*, Substituting its
            Opinions for Those of Edward Shin's Expert ....................28

i

1.  Judge Gold Found that the Building Defendants Had Neither Actual nor Constructive Notice of the Dangerous Conditions Identified by Dr. Marletta ...................28

2.  Without Sufficient Evidentiary Basis, Judge Gold Disregarded Dr. Marletta's Opinion that the Lack of Crowd Control by the Building Defendants was a Cause of Edward Shin's Accident .............................................33

E.  There Was Sufficient Evidence of Proximate Causation to Permit this Case to Go to Trial.............................................................38

VI.  CONCLUSION – RELIEF SOUGHT.........................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Advanced Video Techs. LLC v. HTC Corp.*,
2013 WL 6017923 (S.D.N.Y. Nov. 7, 2013)......................................................24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................................37

*Buchholz v. Trump*, 767 Fifth Avenue, LLC,
5 NY3d 1 (2005) ...........................................................................................19

*Cortes-Irizarry v. Corporacion Insular De Seguros*,
111 F3d 184 (1st Cir 1997)...................................................................... 15, 16

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)................................................................................. *passim*

*Derdiarian v. Felix Contracting Corp.*,
51 N.Y.2d 308, 414 N.E.2d 666, 434 N.Y.S.2d 166 (1980) ......................... 38, 41

*Dilillo v. B. Reitman Blacktop, Inc.*,
299 A.D.2d 517, 751 N.Y.S.2d 273 (2d Dep't 2002).........................................39

*Elliott v. City of New York*,
95 N.Y.2d 730 (2001) ....................................................................................19

*Gallagher v. St. Raymond's R.C. Church*,
21 N.Y.2d 554, 236 N.E.2d 632, 289 N.Y.S.2d 401 (1968) ...............................18

*Haefeli v. Woodrich Eng. Co.*,
255 N.Y. 442, 175 N.E. 123 (1931).................................................................34

*Halo v. Yale Health Plan, Director of Benefits & Records Yale Univ.*,
819 F.3d 42 (2d Cir. 2016) ............................................................................12

*Hanley v. Affronti*,
278 AD2d 868, 718 NYS2d 753 (4th Dep't 2000)...................................... 25, 30

*Harrison v. New York City Transit Auth.*,
94 A.D.3d 512, 941 N.Y.S.2d 622 (1st Dep't 2012).........................................27

*Hoffman v. Brown*,
109 A.D.3d 791, 971 N.Y.S.2d 130 (2d Dep't 2013).........................................26

iii

*Hotaling v. City of New York*,
  55 A.D.3d 396, 866 N.Y.S.2d 117, (1st Dept. 2008), aff'd, 12 N.Y.3d 862,
  909 N.E.2d 577, 881 N.Y.S.2d 655 (2009) .......................................................19

*Hulett v. City of Syracuse*,
  253 F. Supp. 3d 462 (N.D.N.Y. 2017)..............................................................43

*In re September 11 Property Damage and Business Loss Litigation, et al v.*
  *The Port Authority of New York and New Jersey, et al.*,
  468 F.Supp.2d 508 (S.D.N.Y. 2006) .................................................................19

*Kastenbauer v. U.S. Postal Dep't*,
  1988 WL 69959 (E.D.N.Y. June 21, 1988) .......................................................41

*Kaytor v. Elec. Boat Corp.*,
  609 F.3d 537 (2d Cir. 2010) ..............................................................................37

*Kee v. City of New York*,
  12 F.4th 150 (2d Cir. 2021) ...............................................................................37

*Knapp v. Golub Corp.*,
  72 A.D.3d 1260, 897 N.Y.S.2d 781 (3d Dep't 2010)........................................19

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...........................................................................................13

*Lacanfora v. Goldapel*,
  37 A.D.2d 721, 323 N.Y.S.2d 990............................................................... 25, 29

*Laumann v. Natl. Hockey League*,
  56 F. Supp. 3d 280 (S.D.N.Y. 2014) .................................................................36

*Lin v. City of N.Y.*,
  2016 WL 7439362 (S.D.N.Y. Dec. 21, 2016) ...................................................42

*Mack v. Howard*,
  2014 WL 2708468 (W.D.N.Y. June 16, 2014)...................................................42

*McKee v. State*,
  75 A.D.3d 893, 906 N.Y.S.2d 632 (3d Dep't 2010)..........................................34

*Palsgraf v. Long Island R. Co.*,
  248 N.Y. 339 (1928) ..........................................................................................38

*Pommerenck v. Nason*,
  79 A.D.3d 1716, 914 N.Y.S.2d 826 (4th Dep't 2010)................................. 29, 35

iv

*PowerOasis, Inc. v. T–Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) ............................................................24

*Quinlan v. Cecchini*,
   41 N.Y.2d 686, 394 N.Y.S.2d 872, 363 N.E.2d 578 ................................... 25, 29

*Rasin v. City of N.Y.*,
   2016 WL 2596038 (E.D.N.Y. May 4, 2016) ......................................................42

*Scansarole v. Madison Square Garden, L.P.*,
   24 Misc. 3d 1246(A), 901 N.Y.S.2d 910, 2009 WL 2877600 (Sup. Ct. 2009)....19

*Schwab v. Rubel Corp.*,
   286 N.Y. 525, 37 N.E.2d 234 (1941)...................................................................34

*Servelli v. County of Westchester*,
   113 A.D.3d 832, 979 N.Y.S.2d 540 (2d Dep't 2014).........................................27

*Smith v. City of New York*,
   697 F. App'x 88 (2d Cir. 2017) ..........................................................................33

*Solomon v. City of New York*,
   66 N.Y.2d 1026, 489 N.E.2d 1294, 499 N.Y.S.2d 392 (1985) ...........................18

*Tenay v. Culinary Teachers Ass'n of Hyde Park*,
   281 Fed. Appx. 11 (2d Cir. 2008).......................................................................24

*Wilson v. Proctors Theater & Arts Ctr. & Theater of Schenectady*,
   223 A.D.2d 826, 636 N.Y.S.2d 456 (1996)........................................................34

*Zachary v. City of Newburgh*,
   2016 WL 4030925 (S.D.N.Y. July 25, 2016)......................................................42

*Zarega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC,
   571 F.3d 206 (2d Cir. 2009) ...............................................................................13

## Statutes & Other Authorities:

Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 NYU L. Rev.
   286 (2013) ...................................................................................... 37, 43

Fed. R. Civ. P. 56.....................................................................................................43

Fed. R. Evid. 702 ................................................................................................ 14, 17

Prosser, Torts (4th ed.) § 61 .................................................................34

Restatement, Torts 2d, § 341A ............................................................34

# I.     STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This appeal is filed by Edward Shin, Appellant, (plaintiff below) seeking to vacate an order emanating from the United States District Court for the Eastern District of New York. That order granted summary judgment to several, but not all defendants in the case. Those successful defendants, Michel S. Wang, Victoria Wang as Trustee of The Richardson Irrevocable Trust, Terrance Wu, and Deh-Jung Deborah Wang (the "Building Defendants" or "Appellees"), were the joint owners of a certain building in Queens in which Edward Shin was injured. All other defendants have settled their claims and have been dismissed with prejudice after the Appellees' summary judgment at issue on this appeal had been entered.

On December 16, 2020, Magistrate Judge Seven M. Gold, sitting as an Article III judge by the consent of all parties, issued the aforementioned order granting summary judgment in favor of Appellees. That order was issued without holding oral argument. It dismissed all claims lodged against the Building Defendants by Edward Shin with prejudice. As a result, Edward Shin never responded to arguments raised in Appellees' reply brief or, of course, those contained in Judge Gold's summary judgment opinion.

On October 20, 2022, nearly two years after this summary judgment was entered, the District Court issued a final order dismissing the case against the last

remaining defendant and terminated the action. By resolving all matters before it, the District Court converted Judge Gold's December 16, 2020 interlocutory summary judgment to a final judgment. On November 4, 2022, Appellant filed a timely Notice of Appeal, and the District Court clerk immediately forwarded an electronic index of the record to this Court.

## II.   STATEMENT OF ISSUES PRESENTED

1. Did the Record Below Demonstrate that Edward Shin Had Established a Prima Facie Case of Negligence on the Part of the Building Defendants?

2. Did the Expert Report and Deposition Testimony of Edward Shin's Expert, Dr. William Marletta, Identifying Defective Conditions at the Site of Edward Shin's Accident (the "Premises"), Establish Genuine Issues of Material Fact Sufficient to Defeat the Summary Judgment Motion Filed Below by the Building Defendants?

3. Would a Jury be Justified on this Record in Finding That the Building Defendants Breached Their Duty to Provide and Maintain a Reasonably Safe Premises for Invitees such as Edward Shin?

4. Did the Building Defendants Have Sufficient Notice of the Defective Conditions at the Site of Edward Shin's Accident Identified by Edward Shin's Expert, Dr. William Marletta, that Edward Shin Alleged Caused his accident?

5. Would a Finder of Fact Be Able to Find on this Record that at Least One of the Dangerous Conditions at the Site of Edward Shin's Accident Identified by Edward Shin's Expert, Dr. William Marletta, was a Sufficiently Contributing Cause of Edward Shin's Injuries for Liability to Attach to the Building Defendants?

### III.   STATEMENT OF THE CASE

**(1)   Description of nature of case and relevant procedural history.**

This matter arises from an accident at the Premises owned by the Appellees. These Building Defendants were the owners of this mixed-use, commercial building located in Flushing, New York.  A-31-32; 1015.  According to the public records, the Building Defendants chose to rent their second-floor space at the Premises during 2014 to an establishment serving alcoholic beverages (the "Karaoke Bar") after a retail tenant had vacated the Premises.  A-740, 744.

On April 21, 2017, upon leaving the Karaoke Bar and standing on a dangerously undersized, second floor landing, Edward Shin was accidently kicked, causing him to fall down a steep flight of stairs between the second and first floors of this commercial building.  Surveillance Video. This accident, according to Edward Shin's expert witness, Dr. William Marletta, and as confirmed by evidence in the record, was proximately caused *inter alia* by structural defects existing at the

- 3 -

short-landing where Edward Shin fell, as well as by other negligent failures of the Building Defendants.  A-752.

This accident occurred just outside of the exit door of the Karaoke Bar, a substantial business serving alcoholic beverages to the public.  A-744-746.  The Karaoke Bar was classified as a "public place of assembly" under New York law and permitted to have two hundred invitees at any given time. A-744.  As a result of this use and classification, the Building Defendants were obligated to comply with certain requirements of applicable state and municipal building codes, as well as to comply with their independent common law duties to invitees peculiar to the substantial liquor selling business being carried on at the Premises by their tenant, the Karaoke Bar.  A-738-752.

Upon his detailed inspection of the Premises, and specifically the second-floor short-landing area from which Edward Shin fell, Dr. Marletta concluded that the Building Defendants had failed to comply with certain requirements of applicable building codes and that the landing was unsafe regardless of any code requirements or any technical non-compliance.  A-752.

In particular, Dr. Marletta identified three deficiencies rendering the second-floor short-landing area unreasonably hazardous at the time of Edward Shin's accident, each a contributing factor to Edward Shin's accident.  A-747-749, 752.  First, the amount of light emitted by the lighting fixtures where patrons exited the

Karaoke Bar was substandard for a public place of assembly, let alone a business where alcohol was being consumed.  A-744-746, 752.  Second, the width of the second floor's short-landing was too narrow to accommodate safely persons foreseeably congregating on that short-landing after exiting the Karaoke Bar, sober or otherwise.  A-747-749, 752.  Third, the Building Defendants' lack of crowd control on the short-landing where patrons would congregate was a serious deficiency.   A-751, 752.  Dr. Marletta concluded that each of these deficiencies was a contributing factor to the accident.  A-752.  The evidence in the record, especially the video (the "Surveillance Video") submitted to the District Court, confirms the viability of Dr. Marletta's conclusions.  At a minimum, Judge Gold should have permitted a jury to evaluate these conclusions before rejecting them in whole or part.  Instead, Judge Gold ignored all of Dr. Marletta's expert opinions and impermissibly replaced them with contrary "expert" opinions of its own.  Crucially, there was no *Daubert* proceeding and no review of Dr. Marletta's expert evidence for admissibility under Rule 104(a). The results of these mistakes below were the erroneous entry of Summary Judgment in favor of the Building Defendants and this appeal.

**(2) Identification of judge/court below**

The Summary Judgment at issue was entered by Magistrate Judge Steven A. Gold, sitting by consent as an Article III Judge in the United States District Court for the Eastern District of New York. Judge Gold's decision is unreported.

**(3) Facts relevant to issues submitted for review.**

On the evening of April 21, 2017, Edward Shin was a customer at the Karaoke Bar located on the second floor of the Premises, the Building Defendants' commercial building located at 154-05 Northern Boulevard, Flushing, New York. A-1035. The Karaoke Bar was operated by Defendant, YS2 Enterprises Inc. A-1035.

Early in the morning of April 22, 2017, Edward Shin, after congregating with other exiting patrons on the short-landing outside of the Karaoke Bar on the second floor, accidentally fell down the steps closest to the second-floor exit door of the Karaoke Bar. He suffered grave personal injuries. A-186-199. On the date of Edward Shin's accident, the Building Defendants were the joint owners of the Premises. A-31-32;SPA6. The Building Defendants had owned the Premises since at least June 2006. A-774.

During the period of the Building Defendants' ownership, the Premises were the subject of numerous and varied complaints and code violations, as publicly reported by the New York City Department of Buildings. These complaints and

code violations included repeated complaints that the elevator running between the floors of the Premises was not functioning, as well as multiple failures to remedy various other Department of Building violations. A-760-781.

There was evidence before the District Court that several months before Edward Shin's April 21, 2017 accident, a visitor, Chasung Im, fell down the same staircase at the Premises as claimed Shin as its victim. Mr. Im lost his footing on the same short-landing, fell down the same stairs and also suffered serious injuries as a result of his fall. A-709-710.

Public records revealed that the second floor of the Premises had been leased to a retail store when the Building Owners purchased the Premises. A740. However, the entire second floor was converted to an eating and drinking establishment, *i.e.,* the Karaoke Bar, during 2014. The Karaoke Bar was a "public place of assembly," and was therefore required to comply with the requirements of Industrial Code Rule 36 – Places of Assembly, which is defined as "assembly halls maintained or leased for pecuniary gain where one hundred or more persons may assemble for amusement or recreation." A-744.

The lighting at the second floor short-landing was substandard for a Place of Public Accommodation. The second-floor short-landing was only about 90 inches wide. The 90-inch width constituted a "short-landing width [that] poses a safety

problem creating dangerous and cramped conditions where persons are permitted or expected to congregate." A-742, 747-749.

Just before he fell, Edward Shin was standing with his left foot on this short-landing and his right foot on the first step down, as there was insufficient room for him to stand entirely on the short-landing with both feet. The short-landing dimensions created "dangerous conditions for a person descending the stairway, standing on the short-landing, or entering/exiting the [Karaoke Bar]." Crowded conditions with such a short-landing will likely cause loss of proper support where slippage is common. This short-landing was cramped and crowded at the time of the accident. A-747.

For a Premises with a maximum permitted capacity of two hundred persons at the Karaoke Bar, the short-landing at the top of the stairs was too small to accommodate exiting patrons safely and caused Edward Shin to stand unstably with one foot on the floor of the short-landing and one foot on the first step where he could (and was) easily pushed down the stairs. A-747, 752. Thus, the short-landing needed to be configured to accommodate a drinking establishment in which two hundred persons may assemble. It was not so configured, nor did anyone claim otherwise, including Judge Gold.

There was also a complete lack of crowd control at the short-landing that could have addressed the conduct that preceded Shin's fall. At the time of Shin's

accident, there was disorderly activity occurring on the short-landing that should have been rectified to alleviate the impact of the hazardous and dangerous conditions and occurrences contributing to Shin's injuries. A-751, 752. As can be seen in the Surveillance Video, crowd control was needed to prevent the accident caused by drunken customers jostling on the crowded short-landing. There was plenty of time to intervene in the arguments and pushing had crowd control been implemented by the Appellees. There was none.

Edward Shin invites this Court to review the short Surveillance Video, which will assist this Court greatly in understanding the arguments of the parties, as well as to confirm the accuracy of the facts presented by Edward Shin in this appeal. The interpretation included here is one in which Edward Shin contends would permit a jury to find that the Appellees are liable for his injuries.

The Surveillance Video reveals that five people are initially on the short landing, having exited the Karaoke Bar. Video 0:10-11. Edward Shin begins to descend the stairs but is stopped quickly by one of the four men remaining on the short-landing, whom he has just kissed. Surveillance Video 0:11-15. The fifth person has apparently returned to the Karaoke Bar and does not reappear in the Surveillance Video.

At this point, Edward Shin has one foot on the top stair and the other on the short-landing. Edward Shin turns without moving his feet and is shoulder-to-

shoulder with another man on the short-landing as he braces himself against the wall nearest to the stairs. Surveillance Video 0:22-24.   A conversation ensues as the four men (the fifth has disappeared) stand within inches of each other, having no other choice due to the short-landing.  The four men stand so close to each other that they make physical contact without appearing to intend to make such contact. Surveillance Video 0:33-34.  At several points in time, they are forced to be physically close to each other solely as a result of the dimensions of the short-landing.  Surveillance Video 1:00-1:08.

 An argument ensues, resulting in Edward Shin giving "the middle finger" to defendant Young K. Lee, the man in the green sweater.  A-631; Surveillance Video 1:42. Another man tries to back Young K. Lee away from Edward Shin, but the short-landing allows insufficient space to move Young K. Lee a safe distance from Edward Shin.   Surveillance Video 1:43-2:02.  Young K. Lee returns the favor of an extended finger to Edward Shin.   Surveillance Video 2:03.

 As Young K. Lee moves toward Edward Shin in the cramped space, his foot makes contact with Edward Shin, who had not changed position since he had first leaned against the wall with one foot on the top step, sending Edward Shin (spectacularly) down the steps to his injuries.  Surveillance Video 2:16-2:20.

 The jury should be permitted to see this Surveillance Video and to determine if Dr. Marletta is correct: that the undersized, short-landing, with poor lighting and

lack of crowd control, were each contributing factors to the cause of Edward

Shin's fall. Judge Gold precluded the jury from doing so without any

countervailing expert evidence.

### IV.  SUMMARY OF ARGUMENT

Judge Gold impermissibly substituted his own judgment and opinions

regarding the dangerous conditions Edward Shin faced on the night that he was

injured in disregard of the judgment and opinions of Edward Shin's expert, Dr.

William Marletta. The Appellees offered no counter-expert. Judge Gold

impermissibly failed to hold a *Daubert* proceeding before rejecting Dr. Marletta's

expert opinions. Had Judge Gold not substituted his own judgment for that of

Edward Shin's expert, the Appellees' motion for summary judgment would

necessarily have been denied. In addition, Judge Gold made his own findings of

fact while interpreting the Surveillance Video, when the facts he found were not

beyond genuine dispute and, indeed, were contradicted by the video itself as

described above.

### V. ARGUMENT

**A.    The Standard of Review for this Court of Judge Gold's Grant of
        Summary Judgment is *De Novo*.**

This court reviews a grant of summary judgment from the District Court *de*

*novo* and this Court must construe all evidence in the record most favorably to

Edward Shin and draw all reasonable inferences in his favor. *Halo v Yale Health*

*Plan, Director of Benefits & Records Yale Univ.*, 819 F.3d 42, 47 (2d Cir. 2016).

> **B.** **The Surveillance Video, Expert Report. and Deposition**
> **Testimony of Dr. William Marletta Established Genuine Issues of**
> **Material Fact Sufficient to Defeat Summary Judgment Below.**

Edward Shin relied in large measure below upon the expert report and

subsequent deposition testimony of Dr. William Marletta. The Building

Defendants did not seek to exclude Dr. Marletta's opinions, *i.e.,* to submit a

*Daubert* motion, nor did they offer any rebuttal expert testimony. Instead, they

successfully sought to have the District Court ignore or disagree with Dr.

Marletta's opinions without conducting a Rule 104(a) hearing.

The District Court then proceeded to act as a finder of fact and qualified

expert on building safety. Acting in those capacities, Judge Gold rejected all of Dr.

Marletta's opinions, substituting his own. This process was contrary to federal law

and resulted in clear error.

Faced with a proffer of expert scientific testimony such as offered by Dr.

Marletta, the trial judge "**must determine at the outset, pursuant to Rule**

**104(a)**, whether the expert is proposing to testify to (1) scientific knowledge that

(2) will assist the trier of fact to understand or determine a fact in issue. This

entails a preliminary assessment of whether the reasoning or methodology

underlying the testimony is scientifically valid and of whether that reasoning or

methodology properly can be applied to the facts in issue." (emphasis added) (footnote omitted). *Daubert v Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

The sole means to address uncertainty with respect to admissible expert evidence is not through rejection of expert testimony before trial without a Rule 104(a) proceeding, but rather through vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof to the jury after the expert opinion had been tested under Rule 104(a). *See Daubert*, 509 U.S. at 596. The "test of reliability [of expert testimony] is flexible." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Uncertainty concerning an expert's factual predicates or assumptions does not render the expert's testimony inadmissible unless they are "so unrealistic and contradictory as to suggest bad faith." *Zarega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC, 571 F.3d 206, 214 (2d Cir. 2009). Arguments that the expert's assumptions are unfounded "go to the weight, not the admissibility" of an expert's testimony. *See id*. The Supreme Court in *Daubert* provided litigants with a means to test the reliability of expert testimony before trial, which Judge Gold ignored before rejecting Dr. Marletta's expert opinions.

The record and arguments submitted below by the Building Defendants did not establish that Dr. Marletta's opinions were so unreliable that they must be kept

from the jury.  The Appellees chose not to avail themselves of a *Daubert* proceeding to show such unreliability.  Judge Gold did not order a *Daubert* proceeding *sua sponte*.  There was never a review under Rule 104(a), let alone a determination under Rule 104(a) regarding the reliability of Dr. Marletta's expert opinions.  Therefore, the rejection of Dr. Marletta's opinions and replacement with Judge Gold's own opinions was not permitted under federal law.

If there had been a *Daubert* challenge below seeking preclusion of Dr. Marletta's opinions, it would have been rightly rejected. Rule 702 of the Federal Rules of Evidence provides the necessary requirements for the admissibility of expert evidence.  Specifically, Rule 702 provides that the expert's opinion must (1) "help the trier of fact to understand the evidence or to determine a fact in issue;" (2) be "based on sufficient facts and data;" (3) be "the product of reliable principles and methods;" and (4) have resulted from the expert's "reliable [application of] the principles and methods to the facts of the case."

In this case, as demonstrated by his *curriculum vitae*, Dr. Marletta was well qualified to provide his opinions to the Court regarding safety issues at the Premises.  He is a Certified Safety Professional.  He has earned a master's degree and a Ph.D. in Occupational Health and Safety from New York University. He has testified many times as a qualified expert witness on safety matters at trial and has provided expert deposition testimony on several occasions.  A-753-754.

There was no legitimate reason to question Dr. Marletta's qualifications to render his opinions in this matter regarding the deficiencies in design, maintenance, and conduct of the Building Defendants, *i.e.*, the issues that were determinative of the summary judgment motion. In addition, the opinions stated by Dr. Marletta in his expert report and deposition were unrebutted by either expert or lay opinion testimony. Therefore, there was no evidentiary basis upon which Judge Gold could have ignored or disagreed with Dr. Marletta during a *Daubert* proceeding had Judge Gold conducted one. Judge Gold could have reasonably ruled that Dr. Marletta's opinions were so reliable as to render them inadmissible to keep them from the jury.

The Appellees obtained all of the benefits of a successful *Daubert* exclusion motion without filing one. They convinced Judge Gold to ignore Dr. Marletta's opinions and replace them with his own without conducting a Rule 104(a) hearing. This was not only impermissible, but it also severely prejudiced Edward Shin. *See Cortes-Irizarry v Corporacion Insular De Seguros*, 111 F3d 184, 190 (1st Cir 1997) ("[I]n the absence of a *Daubert* determination excluding the Nathanson evidence as scientifically untenable, the trial court was not at liberty on summary judgment to ignore that evidence merely because it deemed other evidence more credible.").

- 15

Dr. Marletta's preparatory work was thorough. He undertook preparation for rendering his opinions far beyond that undertaken by the District Court to come to its contrary opinions. He thoroughly inspected the situs of the accident on August 15, 2017. A-742. Dr. Marletta inspected and measured the short-landing of the Premises where the accident occurred. *Id.* He also measured the stairway as well as the risers of the upper stair section. *Id.* Dr. Marletta measured the ceiling height above the top short-landing. He took illumination measurements of the two overhead fluorescent light fixtures as well as from an additional light fixture on the top short-landing. A-743.

In addition to his physical inspection, Dr. Marletta reviewed at least 32 documents and/or files, including public documents relating to the Premises such as the Certificates of Occupancy, the blueprint of the Premises, title report, and New York City Department of Building records. A738-740. He also reviewed applicable New York City and State Codes, including the New York State Industrial Code, the old and new New York City Building Code, the Building Laws of the City of New York well as reference texts. A-744-750. Finally, he thoroughly reviewed Edward Shin's deposition in this matter, as well as other discovery materials, including the video of the accident. A-740. His report and testimony were well supported by the record. Judge Gold undoubtedly undertook a

small fraction of this preparatory work before coming to his contrary "expert" opinions.

Dr. Marletta issued his report on April 22, 2019, which was immediately produced to all counsel in the case. He listed several conclusions relevant to this appeal. First, he concluded that the Karaoke Bar at the Premises was properly classified as a Public Place of Assembly and therefore was required to meet the requirements of Industrial Code 36. A-744, 752. Second, he concluded that the illumination provided at the short-landing was too low to meet code. A-744-746, 752. Third, he found that the illumination measurement was 3.36 foot-candles. A-744, 752. Fourth, he concluded that the short-landing width was too short and created dangerous conditions for persons standing on the it. A-747-749, 752. Fifth, he concluded that there was a lack of crowd control at the top of the short-landing and that management should have remedied this dangerous condition. A-751, 752. Seventh, he stated that the deficiencies "were likely contributing factors to this accident." A-752. All of these conclusions were confirmed by him in his deposition.

Dr. Marletta's report and testimony satisfied each requirement of Rule 702. As a Certified Safety Professional, Dr. Marletta would be able to assist the jury in determining whether the conditions at the short-landing and the stairs were both dangerous and substantial factors causing the accident. These are issues beyond

the common knowledge of the average juror or, for that matter, judicial officer.

Further, his observations and opinions were based upon sufficient facts and data

and were the product of reliable principles and methods. Additionally, he reliably

applied these principles and methods to the facts in this case. Finally, he

confirmed and elaborated upon all of his written opinions at his deposition in this

matter. There is no evidence in the record to demonstrate otherwise.

### C. The Record Below Demonstrated that Edward Shin Had Established a *Prima Facie* Case of Negligence on the Part of the Building Defendants.

#### 1. The Jury Would be Justified in Finding that the Building Defendants Breached Their Duty to Provide and Maintain a Reasonably Safe Premises for Invitees such as Edward Shin.

"To establish a prima facie case of negligence, a plaintiff must demonstrate

(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3)

injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d

1026, 1027, 489 N.E.2d 1294, 499 N.Y.S.2d 392 (1985). Where, as in this case,

"the general public is invited into stores, office buildings and other places of public

assembly, the owner is charged with the duty of providing the public with a

reasonably safe premises, including a safe means of ingress and egress. *Gallagher*

*v. St. Raymond's R.C. Church*, 21 N.Y.2d 554, 557, 236 N.E.2d 632, 289 N.Y.S.2d

401 (1968) (emphasis added). "[T]he scope of this duty is measure in terms of

foreseeability." *Knapp v. Golub Corp*., 72 A.D.3d 1260, 1261, 897 N.Y.S.2d 781

(3d Dep't 2010).

The Building Defendants argued below that there was no issue of material

fact undermining their claim that there were no code violations related to the situs

of this accident, and that this lack of dispute is dispositive of their motion.

However, it is axiomatic that the absence of a violation of the New York City

Building Code is not sufficient, in and of itself, to defend against a claim of

negligence in an accident case. The specific facts related to the accident must be

considered. *See Hotaling v. City of New York*, 55 A.D.3d 396, 398, 866 N.Y.S.2d

117 (1st Dept. 2008), aff'd, 12 N.Y.3d 862, 909 N.E.2d 577, 881 N.Y.S.2d 655

(2009). As the Supreme Court of New York County explained:

> Even assuming, arguendo, that section C26–649.0 of the 1938 code
> does apply to the facts of this case, just as a violation of a local code is
> only evidence of negligence (*Elliott v. City of New York*, 95 N.Y.2d
> 730 (2001)), code compliance does not determine whether a defendant
> breached its duty of care. *See, In re September 11 Property Damage
> and Business Loss Litigation, et al v. The Port Authority of New York
> and New Jersey, et al*, 468 F.Supp.2d 508 (S.D.N.Y. 2006); *Buchholz
> v. Trump*, 767 Fifth Avenue, LLC, 5 NY3d 1 (2005). This is because
> there may be generally accepted, industry wide standards and
> practices that are applicable, but not codified. *see, Hotaling et al v.
> The City of New York, et al*, 55 AD3d 396 (1st Dept 2008).

*Scansarole v. Madison Square Garden, L.P.*, 24 Misc. 3d 1246(A), 901 N.Y.S.2d

910, 2009 WL 2877600, at *9 (Sup. Ct. 2009). Thus, summary judgment based

upon their claim of code compliance was simply not available to the Building

Defendants, especially in light of their lack of any expert (or lay) opinion regarding the safety *vel non* of the area where Edward Shin fell.

Further, the evidence in the record demonstrated that the Building Defendants not only violated building codes (or at least there was a genuine issue of fact regarding such violations), but also that they failed to maintain the Premises in a reasonably safe condition during the applicable time period, whether they were technically code compliant part of the time or not.

During the period during which the Building Defendants owned the Premises, the Premises were the subject of numerous complaints and violations as compiled by the New York City Department of Buildings. A-760-781. These complaints and violations regarding the Premises included repeated complaints that the elevator in the Premises adjacent to the second-floor, short landing was not functioning, as well as multiple failures to remedy Department of Buildings violations. SPA-8; A-605

Notably, on the date of the accident the elevator was not working, a condition forcing Edward Shin and all other liquor-consuming customers of the Karaoke Bar to use the stairs to exit the Karaoke Bar. A-605. The Building Defendants' failure to properly maintain the elevator was therefore one potential proximate cause of Edward Shin's injuries that the jury could find. Had the elevator been in working order, Edward Shin would have been able to use the elevator and not the stairs,

thus avoiding some of the dangerous conditions on the second floor short-landing. Similarly, the report and testimony of Edward Shin's expert, Dr. Marletta, also demonstrated that there was at least and issue of fact regarding whether the Building Defendants breached their duty to provide Shin with a reasonably safe environment while he was exiting the Karaoke Bar.

As a threshold matter, Dr. Marletta found that the Karaoke Bar was a "public place of assembly" and was therefore required to be compliant with the requirements of the Industrial Code. A-744. As stated in detail *supra*, Dr. Marletta concluded that the lighting on the top short-landing was substandard for a Place of Public Accommodation and that inadequate lighting was a likely contributing factor to the accident by which Shin suffered personal injuries. A-752.

Dr. Marletta also found that the mere 90-inch width of the second-floor short-landing posed a safety hazard that created dangerous and cramped conditions in a location where persons could be expected to congregate. A-742, 747-749, 752. Dr. Marletta further concluded that the short-landing at the top of the stairs was too small for its purpose, and that this deficiency caused Shin to stand unstably with one foot on the floor of the short-landing and one foot on the first step where he could (and was) easily pushed down the stairs. A-747. Dr. Marletta noted that this short-landing was cramped and crowded at the time of the accident and concluded

that the dangerous and cramped nature of this short-landing was a contributing factor to Edward Shin's accident. A-747, 752. There was no contrary evidence put before the District Court. Indeed, the Surveillance Video shows that once Edward Shin decided not to proceed immediately down the stairs, there was no room for him to get back on the landing with two feet planted, as the three other gentlemen occupied all of the available space.

Lastly, Dr. Marletta concluded that there was a lack of crowd control at the top of the short-landing and that the Building Defendants' failure to remedy this dangerous condition was a likely contributing factor to Edward Shin's accident. A-751, 752. Once again, there was no contrary evidence. The lack of crowd control at the short-landing was obvious from the Surveillance Video, as the four patrons are on the short-landing and there is nothing to control their activities.

These deficiencies led Dr. Marletta to testify that the short-landing was in violation of the applicable codes:

> Q. The landing -- the landing is in compliance with the code.
> A. No.
> Q. You used the word --
> A. No.   I said three times, no.
> Q. It is not in compliance?
> A. I said three times, no.
> Q. It is not in compliance?
> A. No, it is not.
> Q. With the code?
> A. That is correct.
> Q. Which code are you referring to?
> A. Any of the codes.

Q. Okay. So when we go back to page 19--

A. If you would let me talk, we could help you do your deposition.

Q. When we go back to page 11 of your report, and you do say, and we clarified this because you didn't include this top landing in your – in 2 your -- in your summary, that the landing, the second floor landing, and the intermediate landing, is technically adequate in accordance with the cord[sic].      And the only reason, in your report, that you find that it is not safe, is based on your own professional opinion?

A. No.

Q. So you are saying it is in violation of the code?

A. Yes.

Q. Which code is that?

A. The building code of the City of New York, Public Places of Assembly Industrial Code Rule 36 and there are others.

Q. Okay.

Do you cite those in your report?

A. Yes, I do.

Dr. Marletta deposition, A-958-959. *See also* pp. 70-71 A-951-952. (Dr.

Marletta opining that any technical compliance with code section failed to render this short-landing safe for its use in front of the Karaoke Bar). Dr. Marletta's opinions were unrebutted by a counter opinion, either expert or lay. None were ever ruled inadmissible by Judge Gold. Accordingly, the Building Defendants did not establish below that the short-landing was up to code and was therefore safe.

Judge Gold rejected all of Dr. Marletta's opinions based upon Judge Gold's own review of a small portion of the material reviewed by Dr. Marletta. Judge Gold never examined the site of the accident before coming to his factual conclusions regarding the dangerousness of the accident site; Dr. Marletta did. Judge Gold never made measurements of the accident site: Dr. Marletta did. Dr.

- 23

Marletta was trained and experienced in the dangers associated with stairs and landings; Judge Gold was not.

As the District Court for the Southern District of New York has explained, disagreement with an expert opinion is not sufficient to eliminate factual disputes that were dependent upon expert testimony:

> Although Defendants clearly disagree with the conclusions of AVT's expert, Dr. Franzon, they have not presented any expert testimony of their own in rebuttal, and have therefore fallen far short of proving that no reasonable fact finder could return a verdict in AVT's favor on the issue. *See PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed.Cir.2008).

*Advanced Video Techs. LLC v. HTC Corp.*, 2013 WL 6017923, at *9 (S.D.N.Y. Nov. 7, 2013).  Without countering expert evidence, the Building Defendants were left with the daunting task of establishing on this record that Dr. Marletta's opinions are so unreliable that a jury should never hear them.   To attempt to do so, they needed to file a *Daubert* motion.

## 2. The Building Defendants Had Sufficient Notice of the Defective Conditions That Caused Shin's Accident.

 "To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate that the [defendant] either created the defective condition, or had actual or constructive notice for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 Fed. Appx. 11, 13 (2d Cir.

2008).  There is no requirement that the owner of a property understand that the

condition is dangerous, only that the condition exists.

> Defendants testified that they resided in that house for 30 years and that no one had previously fallen down the stairs. Plaintiffs contend, however, that it was reasonably foreseeable that a person leaning against the door would fall down the stairs where, as here, the door was not latched shut (*see generally, Quinlan v. Cecchini,* 41 N.Y.2d 686, 690, 394 N.Y.S.2d 872, 363 N.E.2d 578; *Lacanfora v. Goldapel,* 37 A.D.2d 721, 323 N.Y.S.2d 990). Under the circumstances of this case, we conclude that there is a triable issue of fact whether defendants had constructive notice of the allegedly dangerous condition.

*Hanley v Affronti*, 278 AD2d 868, 869, 718 NYS2d 753, 754 (4th Dept 2000).

 Edward Shin argued below that there was sufficient evidence, including

expert opinion evidence, for a jury to find that the Premises contained three

material deficiencies relevant on this appeal, *i.e.*, the substandard lighting, the

inadequately wide short-landing, and the lack of crowd control, each of which

could establish a proximate cause of Shin's accident and resulting injuries.

The Building Defendants created the lack of crowd control conditions, as

they neither provided any crowd control nor required their liquor-mongering tenant

to do so.  This second-floor space was originally leased to a retail establishment,

A-740, 744, but there is no evidence that the Building Defendants made any safety

adjustments when the occupancy shifted to a business selling liquor.

The Building Defendants also had at least constructive notice of the other

defective conditions in the Premises.  To constitute constructive notice, "a defect

must be visible and apparent for a sufficient length of time prior to the accident to permit [the defendant] to discovery and remedy it." *Hoffman v. Brown*, 109 A.D.3d 791, 792, 971 N.Y.S.2d 130 (2d Dep't 2013). Constructive notice may be imputed where a defect is latent and would be discoverable upon reasonable inspection. *Id*. Here, the physical characteristics of the short-landing reported by Dr. Marletta could not have been unnoticed by the Building Defendants by the time of the accident, a decade after they purchased the building and three years after renting to the Karaoke Bar.

There is no record in the Building Department of the short-landing being shrunk or altered during the course of their ownership, so it had existed in those same dimensions since the Building Defendants purchased the building. Further, the Affidavit of Michel S. Wang, submitted below by Appellee's in support of the motion for summary judgment, detailed the Building Defendants' intimate knowledge of the precise area and conditions at issue here, demonstrating the Building Defendants' actual (not merely constructive) knowledge of everything they needed to know to evaluate the short-landing area's dangers. A-1015-1017.

In addition, it was undisputed below that several months before Shin's accident, a similar accident occurred at the Premises during which Chasung Im fell down the same staircase. A-710. Mr. Im lost his footing on the same short-landing, fell down the same stairs and suffered serious injuries as a result of the

fall. A-710. The fact that there was a similar prior accident on the same short-landing independently constituted constructive notice to the Building Defendants of the dangerous condition on the second-floor short-landing. *See Harrison v. New York City Transit Auth.*, 94 A.D.3d 512, 514, 941 N.Y.S.2d 622 (1st Dep't 2012) ("evidence of an unremedied condition that recurred and caused prior accidents because it was not addressed could constitute constructive notice."); *Servelli v. County of Westchester*, 113 A.D.3d 832, 833, 979 N.Y.S.2d 540 (2d Dep't 2014) (same).

In any event, the defects in the Premises identified by Dr. Marletta were discoverable upon reasonable inspection, even if there had been no prior falls. The Building Defendants owned the Premises for more than a decade before Shin's accident. A-774. During that period of time, the Premises was the subject of numerous complaints and violations, including repeated complaints that the elevator in the Premises abutting the short-landing was not functioning, as well as multiple failures to remedy Department of Buildings violations. A-760-781. The Building Defendants should have conducted a thorough inspection of the Premises, in the unlikely event they did not actually do so. Any reasonable inspection would have disclosed the patent defects in the Premises identified by Dr. Marletta. As a result, the Building Defendants had at least constructive, if not actual notice of each of the defects cited in Dr. Marletta's report.

**D.    The Court Below Erred By, *Inter Alia*, Substituting its Opinions for Those of Edward Shin's Expert.**

Although this Court's standard of review is *de* novo, and no weight is to be given to the conclusions of the District Court, it is undoubtedly instructive to review Judge Gold's opinion to see where he erred in granting summary judgment.

**1.  Judge Gold Found that the Building Defendants Had Neither Actual nor Constructive Notice of the Dangerous Conditions Identified by Dr. Marletta.**

Judge Gold concluded that Edward Shin had not raised a genuine issue of material fact regarding whether the Appellees had actual or constructive notice of the dangerous conditions identified by Dr. Marletta.  He erred on both conclusions.

Judge Gold ignored the evidence of numerous building code violations that had come to the attention of the Building Defendants before the accident. His reasoning was that, "To provide notice, however, the building code violations and complaints must have some connection to the defect or defects alleged to have caused a plaintiff's accident."  SPA-16.  In the first instance, the violation regarding the elevator was a defect that was closely connected to Edward Shin's accident.  The elevator was once again inoperable on the night of the accident and would have provided a safe path to the first floor for Edward Shin.

Regardless of the connection between the building code violations and the cause of the accident, these violations demanded and received the attention of the Building Defendants to this building in general and to the second-floor landing

area in particular.  It is at least an issue of fact that the Building Defendants during

their long period of ownership became aware of the condition of the short-landing

where the accident occurred, as well as the deficient lighting.  In any event, these

numerous building code violations and attempted cures triggered the duty of

inspection long before the accident occurred.  *See Pommerenck v Nason*, 79

A.D.3d 1716, 1717, 914 N.Y.S.2d 826, 828 (4th Dep't 2010).  Such an inspection

would have revealed these deficiencies if properly performed, as demonstrated by

Dr. Marletta's report and testimony.

Judge Gold further erred by holding that adequate notice of the defects to the

Building Defendants, either constructive or actual, required not only that the

Building Defendants were actually aware of the conditions that Dr. Marletta

opined caused the accident, but also that the Building Defendants had also

concluded that the conditions were dangerous.  SPA-17 ("The key issue, though, is

whether *any alleged defect or dangerous characteristic* of the landing or lighting

would have been apparent to defendants." (emphasis in original)).  This misstates

the law.

> Defendants testified that they resided in that house for 30 years and
> that no one had previously fallen down the stairs. Plaintiffs contend,
> however, that it was reasonably foreseeable that a person leaning
> against the door would fall down the stairs where, as here, the door
> was not latched shut (*see generally, Quinlan v. Cecchini,* 41 N.Y.2d
> 686, 690, 394 N.Y.S.2d 872, 363 N.E.2d 578; *Lacanfora v.
> Goldapel,* 37 A.D.2d 721, 323 N.Y.S.2d 990). Under the

- 29

circumstances of this case, we conclude that there is a triable issue of
fact whether defendant had constructive notice of the allegedly
dangerous condition.

*Hanley v Affronti*, 278 A.D.2d 868, 869, 718 N.Y.S.2d 753, 754, (4th Dep't 2000).

Thus, the crucial finding of fact that Judge Gold relied upon, that although the

Building Defendants were necessarily aware of the conditions at the short-landing

they were not aware of any danger, did not preclude Edward Shin from having the

jury decide if the Building Defendants had constructive or actual notice of the

dangerous conditions.  The Building Defendants were not freed from responsibility

for a dangerous condition simply because they did not understand that the open and

obvious condition to be dangerous.

In addition, from a purely factual point of view, there was at least a genuine

issue of fact regarding whether the short-landing was an appropriate size for a

drinking establishment licensed to house two hundred patrons.  The potential

dangers of such a small landing would have been apparent to the Building

Defendants had they bothered to consider the safety of their invitees.  Dr. Marletta

found that the second-floor short-landing was only about 90 inches wide. The 90-

inch width constituted a "short-landing width [that] poses a safety problem creating

dangerous and cramped conditions where persons are permitted or expected to

congregate." A-747.

It was undisputed that just before Edward Shin fell, he was standing with his left foot on this short-landing and his right foot on the first step down, as there was insufficient room for him to stand with both feet on the short-landing. *See* Surveillance Video. The short-landing dimensions created "dangerous conditions for a person descending the stairway, standing on the short-landing, or entering/exiting the [Karaoke Bar]." A-747; Surveillance Video. Crowded conditions with such a short-landing will likely cause loss of proper support where slippage is common. This short-landing was cramped and crowded at the time of the accident. A-747; Surveillance Video.

Dr. Marletta found that for a Premises with a maximum permitted capacity of two hundred persons at the Karaoke Bar, the short-landing at the top of the stairs was too small to accommodate exiting patrons safely and caused Edward Shin to stand unstably with one foot on the floor of the short-landing and one foot on the first step where he could (and was) easily pushed down the stairs. A-747. Indeed, the finder of fact could have found easily that short-landing was too small for even these four persons to occupy, as was apparent from the Surveillance Video. There was no valid justification for Judge Gold to conclude as a matter of law that the danger of drunken patrons congregating on the short-landing was a dangerous condition as Dr. Marletta opined, but was not "apparent" to the Building Defendants.

- 31

Judge Gold erred more generally by ignoring the fact that the Building Defendants choose to rent this second-floor space to a business that sold liquor, without doing anything to make the Premises safe for intoxicated patrons. Further, Judge Gold made findings of fact based upon his own view of the Surveillance Video, that were different from what a reasonable jury could conclude.

There was evidence before the District Court that several months before the April 21, 2017 accident, a visitor, Chasung Im, fell down the same staircase at the Premises as claimed Shin as its victim. A-17. Mr. Im lost his footing on the same short-landing, fell down the same stairs and also suffered serious injuries as a result of his fall. A-710. Judge Gold refused to consider this evidence on hearsay ground. However, Judge Gold should have considered the evidence. Discovery was ongoing, as on the same date this summary judgment was entered, the Court entered this Order on the docket: "ORDER: The remaining parties to the case, which the Court understands to be plaintiff Shin and defendant Lee, shall confer on a schedule for completing discovery and submitting a joint pretrial order to the Court. Plaintiff shall submit a letter by December 30, 2020, advising the Court of the schedule agreed to by the parties. Ordered by Magistrate Judge Steven M. Gold on 12/16/2020. (Gillespie, Saudia) (Entered: 12/16/2020)." A-17. Thus, it was improper for Judge Gold to ignore this evidence of a prior accident because he considered it to be "hearsay" at the time of the summary judgment motion.

"[M]aterial relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017). These facts could have been further developed and authenticated during discovery.

In addition, there was nothing before the Court to allow it to conclude correctly that non-hearsay evidence emanating from Mr. Im's fall could not be relied upon at trial, nor did the Court so conclude. Accordingly, this evidence should not have been excluded at the summary judgment stage. This evidence could have been considered by Judge Gold not for the truth, *i.e.,* that Mr. Im had an accident and suffered injuries, but that such a claim was made that would have alerted the Building Defendants to the dangers inherent in the stairs and landing. This would be admissible evidence even if Mr. Im's claim was false. Had the evidence of Mr. Im's fall been accepted by Judge Gold for the purposes of notice, and not the truth, summary judgment could not have been reasonably entered.

## 2. Without Sufficient Evidentiary Basis, Judge Gold Disregarded Dr. Marletta's Opinion that the Lack of Crowd Control by the Building Defendants was a Cause of Edward Shin's Accident.

Judge Gold disagreed with Dr. Marletta's conclusion that a lack of crowd control by the Building Defendants was a proximate cause of Edward Shin's accident. Judge Gold's reasoning had nothing to do with the causal connection

between lack of crowd control and Edward Shin's accident. The lack of crowd

control was an omission by the Building Defendants. Judge Gold appeared to

believe that absent an affirmative act by the Building Defendants related to the

lack of crowd control, there could be no claim asserted against the Building

Defendants regarding the lack of crowd control. SPA-14. Judge Gold identified

no law requiring the commission of an "affirmative act" as a predicate for finding

liability for lack of crowd control. There is no requirement of an "affirmative

act" for a property owner to be liable for failure to remedy a dangerous condition.

> Even without proof of a design defect, defendant could be liable for
> common-law negligence due to a failure to remedy or warn of a
> dangerous or defective condition (*see Wilson v. Proctors Theater &
> Arts Ctr. & Theater of Schenectady*, 223 A.D.2d 826, 829, 636
> N.Y.S.2d 456 (1996)). . . Based on defendant's failure to maintain the
> sill from crumbling and deteriorating into an uneven surface,
> defendant was liable to claimant in negligence for allowing a
> dangerous condition to exist, which resulted in claimant's injuries.

*McKee v State*, 75 A.D.3d 893, 894, 906 N.Y.S.2d 632, 633 (3d Dep't 2010). The

duty owed to an invitee such as Edward Shin is to use due care to keep the property

in a reasonably safe condition so that invitees will not unnecessarily be exposed to

danger. *See Haefeli v. Woodrich Eng. Co*., 255 N.Y. 442, 448, 175 N.E. 123, 125

(1931)(citing Restatement, Torts 2d, ss 341A, 343, 343A; Prosser, Torts (4th ed.) s

61, at pp. 392-394). This duty includes an obligation to warn an invitee of any

hidden danger if the possessor is unable to maintain the property in a reasonably

safe condition. *See Schwab v. Rubel Corp.*, 286 N.Y. 525, 529-530, 37 N.E.2d

234, 236 (1941). Further, during the several years the Building Defendants owned the Premises and the conditions existed that were present the night of Edward Shin's accident, the Building Defendants were duty bound to discover the dangerous conditions identified by Dr. Marletta, as:

> "landowner[s] may be under an affirmative duty to conduct reasonable inspections of the premises, despite the general notion that notice is a prerequisite to recovery for injuries caused by a dangerous condition" . . . The duty of landowners to inspect their property is measured by a standard of reasonableness under the circumstances.

*Pommerenck v Nason*, 79 A.D.3d at 1717, 914 N.Y.S.2d at 828 (citations omitted). Here, it was perfectly reasonable for the Building Owners to have been burdened with the duty to inspect the short-landing, to inspect the lighting, and to identify the lack of crowd control that Dr. Marletta identified so they would discover the dangerous conditions that led to Edward Shin's accident after the tenancy was converted from a retail store to a Karaoke Bar in 2014. *See* A-744.

Judge Gold was not only mistaken on the law, but he was also factually wrong. He opined that the violations of the building code were not relevant because "plaintiff fails to connect the claimed dangerous conditions with any of the violations or complaints issued to defendants by the Department of Buildings." SPA-16. What Judge Gold failed to appreciate was that these numerous violations, including the lack of the working elevator that could have prevented the accident, gave the Building Owners the incentive and obligation to make a

reasonable inspection of the Premises, during which any defects in the area where this accident occurred should have been discovered. The Building Owners were not entitled to wait for Dr. Marletta to identify for them the dangerous conditions that led to Edward Shin's accident.

More troubling is that Judge Gold came to his own, non-expert conclusions after reviewing the Surveillance Video, then finding that Dr. Marletta's contrary conclusions were simply wrong. District Court Opinion, SPA-17-18. Judge Gold substituted his own judgment for that of Dr. Marletta. Once Dr. Marletta identified the dangerous conditions, it was for the jury to evaluate them, not Judge Gold.

> It is an unfortunate trend that judges increasingly resolve trial-worthy disputed fact issues or characterize cases as implausible, thereby disposing of them on motion rather than allowing them to proceed to trial.... [A] motion designed simply for identifying trial-worthy issues has become, on occasion, a vehicle for resolving trial-worthy issues.... The effect is to compromise the due process underpinnings of the day-in-court principle and the constitutional jury trial right without any empirical basis for believing that systemic benefits are realized that offset these consequences.

*Laumann v Natl. Hockey League*, 56 F. Supp. 3d 280, 307 (citations in footnote omitted) (S.D.N.Y. 2014). As Arthur Miller has written:

> Unfortunately, one fears that occasionally judges inappropriately resolve trial-worthy disputed fact issues or characterize cases as implausible,[94] thereby disposing of them on motion rather than allowing them to proceed to trial.[95] Stated differently, the ambit of what is a "genuine dispute as to any material fact,"[96] which must be left for trial according to Rule 56(a) (and, of course, in many cases to a jury according to the Seventh Amendment of the Constitution), has been reduced. Conversely, what is being decided by judges "as a matter of law" on summary judgment has

been enlarged.[97] Put yet another way, a motion designed simply for identifying trial-worthy issues has become, on occasion, a vehicle for resolving trial-worthy issues. Even when the motion is unsuccessful, summary judgment has become an expensive and time-consuming pretrial stopping point with attendant delay, expense, and risk of premature termination.[98] The effect is to compromise the due process underpinnings of the day-in-court principle and the constitutional jury trial right[99] without any empirical basis for believing that systemic benefits are realized that offset these consequences.[100]

Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 NYU L. Rev. 286, 311-12 (2013) (footnotes omitted).  Indeed, the Supreme Court has barred the District Courts from weighing evidence, as Judge Gold did in this matter, at the summary judgment stage. "[I]t is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

> "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit, for the court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe." *Rogoz*, 796 F.3d at 246 (internal emphasis, citations, and quotation marks omitted); *accord Lucente*, 980 F.3d at 296.

*Kee v City of New York*, 12 F.4th 150, 166-67 (2d Cir. 2021).  Accordingly, Judge Gold erred when he determined that the Building Defendants had no notice,

constructive or actual, of the dangerous conditions that existed at the short-landing for several years.

**E. There Was Sufficient Evidence of Proximate Causation to Permit this Case to Go to Trial.**

New York's law of proximate cause is perhaps the richest and most widely followed of all jurisdictions, especially since the publication of *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 340 (1928). New York's doctrine of proximate cause requires courts to search the record and weigh all of the factors to meet the public policy of compensating victims for injuries suffered in this state. To that end, the New York courts have eased the traditional burdens on negligence plaintiffs when attempting to establish a *prima facie* case by requiring only that the defendant's negligence was a substantial cause of injury. This minimal, "substantial cause" requirement does not require proof that the precise manner of the accident's occurrence was foreseeable.

> Given the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause, once the court has been satisfied that a prima facie case has been established. To carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury. Plaintiff need not demonstrate, however, that the precise manner in which the accident happened, or the extent of injuries, was foreseeable. (emphasis added)

*Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314–15, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 169 (1980) (citations omitted).

Whether any of the Premises' defects or the faulty conduct of Building Defendants was a proximate cause, *i.e.*, a substantial contributing factor, to the fall that resulted in Mr. Shin's injury, was a jury issue, as the jury may be aided by expert testimony. The jury could reasonably determine that renting second floor space to a drinking establishment, with a cramped exit area at the top of steep stairs, with poor lighting and no crowd control, could foreseeably lead to a fall down the steps such as Edward Shin suffered. As such, summary judgment was not available to the Building Defendants due to the significant evidence of proximate causation.

When the issue of proximate cause does not exceed the scope of common knowledge of the jury, it is properly determined by them. *Dilillo v B. Reitman Blacktop, Inc.*, 299 A.D.2d 517, 751, N.Y.S.2d 273, 274 (2d Dep't 2002). But, on this record, the jury should have been allowed to hear the unrebutted testimony of Dr. Marletta, to consider the controverted and uncontroverted facts regarding the gathering at the short-landing and the resulting fall, and to review the Surveillance Video. That Surveillance Video would have revealed to the jury the short-landing, the lack of crowd control, Edward Shin's precarious positioning, and the severe crowding on the short-landing caused by a small group of merely four patrons of the two hundred permitted at the Karaoke Bar. The Karaoke Bar was licensed to

have as many as two hundred patrons, so surely the gathering of four patrons on the short-landing was not unforeseeable. A-747.

After reviewing the evidence in the record below, one reasonable conclusion the jury could have reached would have been that the negligence of the Building Defendants was a substantial cause the accidental fall that resulted in Shin's injuries. Judge Gold did not permit a jury to be convened, thereby committing error.

The Building Defendants claimed below that events and conditions other than their own negligence should have been held by the District Court to have been the sole causes of Edward Shin's injuries. They cited to the various congregants' intoxication, Defendant Lee's kick, a "physical altercation," and Edward Shin's precarious positioning with only one foot on the landing. But, Dr. Marletta was well aware of these events and conditions and included references to each of them in his report and deposition testimony. *See* A-747. These important matters merely go to the weight to be given to Dr. Marletta's proposed testimony. Under New York law, proof of the existence of causes other than the Building Defendants' negligence does not inoculate the Building Defendants from being found liable, if they are found to have breached a duty to Edward Shin.

> A finding of proximate cause will not be defeated, moreover, by offering several alternative causes which may be hypothetically conceivable; if the plaintiff has shown sufficient facts and circumstances from which causation can be reasonably inferred, it is

- 40

not necessary to disprove every other possible cause to recover. Derdiarian v. Felix Contr. Corp., 51 N.Y.2d 308, 434 N.Y.S.2d 166, *rearg. denied*, 52 N.Y.2d 829, 437 N.Y.S.2d 1030 (1980). (emphasis added)

*Kastenbauer v. U.S. Postal Dep't*, 1988 WL 69959, at *3 (E.D.N.Y. June 21, 1988). Accordingly, the Building Defendants' effort to obtain summary judgment by attacking Shin's and Dr. Marletta's proximate cause evidence should have failed.

In his consideration of proximate cause, Judge Gold acted as expert and jury by deciding matters of fact based upon his own review of the Surveillance Video and whatever expertise he may have acquired somewhere in building safety. For example, Judge Gold opined that Edward Shin was not standing with one foot on the top step because the short-landing was too small. SPA-21. But this is precisely what the Surveillance Video shows. Judge Gold concluded that "the video shows that there was additional space on the floor of the landing where Lee and the others could have moved to if members of the group had preferred to be further apart or if plaintiff attempted to rejoin them with both feet on the landing." SPA-21. But, the Surveillance Video shows just the opposite, that there was very little room for the men to stand other than where they were, or for Edward Shin to move his feet. Surveillance Video. Add to this the fact of obvious intoxication requiring much more room for error that a larger landing would have afforded.

Judge Gold next concluded that "Nor is there any evidence or logical reason to think that plaintiff would have been better able to withstand being kicked without falling if he had both feet on the landing." SPA-21. This is certainly a strange conclusion, since Edward Shin would have had a wall behind him, not the stairs, had he managed to get his left foot on the short landing.

Finally, Judge Gold opined that "Dr. Marletta's assertion that plaintiff came to be standing on the edge of the stairs because "the short-landing at the top of the stairs was too small for its purpose," SPA-21, fails to raise a question of fact because the video footage 'blatantly contradict[s]' this contention. SPA-21-22. This false conclusion is rebutted by the Surveillance Video and without a *Daubert* hearing rejecting this expert opinion the jury should have been permitted to form its own conclusion from all of the evidence, including the Surveillance Video.

> Notably, in recent years district courts in this Circuit have made explicit what many of these commentators feared Scott's holding had at best left implicit: the mere existence of a videotape in the record depicting some or all of the events in dispute will not *always* be dispositive at the summary judgment stage.[5] Compare, e.g., Zachary v. City of Newburgh, 2016 WL 4030925, at *8 (S.D.N.Y. July 25, 2016) ("Although the video evidence casts significant doubt on plaintiff's version of the events in the strip search room, a reasonable juror could [still] credit plaintiff's account."), Rasin v. City of N.Y., 2016 WL 2596038, at *7 (E.D.N.Y. May 4, 2016) ("The parties have testified to two different stories, and the video evidence is not so conclusive as to determine this factual dispute as a matter of law."), and Mack v. Howard, 2014 WL 2708468, at *3 (W.D.N.Y. June 16, 2014) (declining to grant summary judgment where the "case boil[ed] down to two *credible* interpretations of the same video" (emphasis added)), with, e.g., Lin v. City of N.Y., 2016 WL 7439362, at *11 (S.D.N.Y. Dec. 21,

2016) ("[T]he video evidence unavoidably shows that the force used was constitutionally reasonable.").

Each of these decisions recognize the general principle that, in the ordinary case, the appropriate course of action is still to permit the jury an opportunity to "resolve the competing versions of events, *in conjunction with the video*, through the ordinary fact-finding processes in which juries engage: evaluating credibility, drawing inferences from everything they ha[ve] seen and heard, and deciding what all the evidence 'means' and what it reveals about what happened." Wasserman at 184 (emphasis added); <u>see also</u> Arthur R. Miller, <u>Simplified Pleading, Meaningful Days in Court, & Trials on the Merits: Reflections on the Deformation of Federal Procedure</u>, 88 N.Y.U. L. Rev. 286, 311 (2013) (observing that the summary judgment device has **"taken on an Armageddon-like significance; it has become both the centerpiece and end-point for many (perhaps too many) federal civil cases"**).

*Hulett v City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017).

Accordingly, this Court should rule that Judge Gold overstepped his authority under federal law, including but not limited to Federal Rule of Civil Procedure 56 and Federal Rule 104(a), and therefore his order granting summary judgment should be vacated.

# VI.    CONCLUSION – RELIEF SOUGHT

Appellee's motion for summary judgment should have been denied below.

This matter should be remanded to the District Court for further proceedings as the

District Court deems appropriate upon remand.

/s/ROBERT J. BASIL

Robert J. Basil, Esq.
The Basil Law Group, P.C.
125 West 31st Street #19-B
New York, NY 10001
robertjbasil@rjbasil.com
917-994-9973
831-536-1075(fax)
*Attorneys for Appellant, Edward Shin*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 10,608 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
        December 28, 2022

# SPECIAL APPENDIX

**i**

## TABLE OF CONTENTS

**Page**

Memorandum and Order of the Honorable Steven
M. Gold, dated December 16, 2020 ....................... SPA-1

Appendix A to Order -
Photograph ............................................................. SPA-23

Appendix B to Order -
Photograph ............................................................. SPA-24

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
EDWARD SHIN,                                                  :
                                                             :
                            Plaintiff,                       :
                                                             :
     -against-                                               :
                                                             :     MEMORANDUM &
YS2 ENTERPRISES INC., MICHEL S. WANG,[1]    :     ORDER
VICTORIA WANG as TRUSTEE OF THE                   :     17-CV-5183 (SMG)
RICHARDSON IRREVOCABLE TRUST,                     :
TERRENCE WU, DEH-JU DEBORAH WANG,         :
and YOUNG K. LEE,                                            :
                                                             :
                            Defendants.                      :
                                                             :
---------------------------------------------------------------- x
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Edward Shin brings this action to recover for injuries he sustained when he fell

down the stairs at a karaoke bar operated by defendant YS2 Enterprises Inc. ("YS2") in a

building (the "premises") owned by defendants Michel S. Wang, Victoria Wang as Trustee of the

Richardson Irrevocable Trust, Terrance Wu, and Deh-Jung Deborah Wu (the "Owner

defendants" or "defendants").  Second Am. Compl. ("Compl.") ¶¶ 1–2, 28, Dkt. 33.  Plaintiff

also brings this action against Young K. Lee, alleging that Lee caused plaintiff to fall down the

stairs by kicking him.  *Id.* ¶¶ 3, 27.  YS2, the Owner defendants, and Lee have each brought

cross-claims against each other seeking indemnification and contribution should any one of them

be found liable.  *See* YS2 Third-Party Compl. at 8, Dkt. 20; Owner Defs.' Answer to Second

Am. Compl. at 12–15, Dkt. 34; Lee Answer at 6, Dkt. 42.[2]

---

[1] The Owner defendants' answers refer to "Michael S. Wang" as a defendant, *see* Dkt. 31, 34, but Wang refers to himself as Michel in his affidavit, *see* Dkt. 76-17.

[2] Plaintiff has reached a settlement with YS2.  Ltr. dated Jan. 13, 2020, Dkt. 67.

The Owner defendants now move for summary judgment on all claims and cross-claims asserted against them on the following grounds: 1) the Owner defendants did not create or have actual or constructive notice of any alleged dangerous conditions on the premises where plaintiff fell; and 2) even if any defects in the stairwell could be attributed to the Owner defendants, those defects were not the proximate cause of plaintiff's fall or injuries.  Mem. of Law in Supp. of Owner Defs.' Mot. for Summ. J. ("Defs.' Mem.") at 4–5, 11, Dkt. 76-19.

For the reasons explained below, the Owners defendants' motion is granted.

## FACTUAL BACKGROUND

The following facts are drawn primarily from the Owner defendants' statement filed in accordance with Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of New York and the parties' depositions.  *See* Defs.' Rule 56.1 St. of Facts ("Defs.' SOF"), Dkt. 76-18.  Except where noted below, plaintiff does not dispute defendants' assertions of fact.  The Court also relies on its viewing of the surveillance video provided by the Owner defendants.  *See* Video, Dkt. 76-8.[3]

### A.  Plaintiff's Accident

Plaintiff was injured at about 12:45 a.m. on the morning of April 22, 2017, after a night of socializing with friends and associates.  Defs.' SOF ¶¶ 1–4.  Plaintiff began the night at a restaurant in New Jersey, where he consumed approximately 5 to 6 shots of scotch whiskey.  *Id.* ¶ 3.  His friend, John Kim, then drove plaintiff from dinner to YS2's karaoke bar in Flushing, New York.  *Id.* ¶¶ 1–3.  Plaintiff had arranged to meet his friend Chung K. Lee[4] at the karaoke

---

[3] The link initially provided by the Owner defendants, and included in Dkt. 76-8, did not work.  The Court used a downloadable video file provided by the Owner defendants in a separate email exchange.

[4] I refer to Chung K. Lee by his full name throughout this memorandum to avoid confusion with the defendant Young K. Lee, who is referred to as "defendant Lee" or "Lee."

SPA-3

bar. *Id.* ¶ 4.  On plaintiff's prior ten visits to this second-floor karaoke bar, he used the elevator;

he did not, however, remember whether he took the elevator or stairs when he arrived on the

night of April 21, 2017.  Dep. of Edward Shin ("Pl.'s Dep.") at 54:2-6, 55:18-25, 71:20-24, Dkt.

76-3.

     Once in the karaoke bar, plaintiff met Chung K. Lee in Room #2.  Defs.' SOF ¶ 4.

Plaintiff testified that he had another 3 to 5 shots of whiskey, with beer, in Room #2, though Kim

and Joshua So, the former manager of YS2, testified that no beer was brought into Room #2.  *Id.*;

Pl.'s Resp. to Defs.' Rule 56.1 St. of Facts ("Pl.'s SOF Opp.") ¶ 4, Dkt. 76-20 at ECF pages 1–

12; Dep. of Joshua So ("So Dep.") at 7:7–8:3, 29:2-9, Dkt. 76-6.  Kim remembered plaintiff

having about 3 to 4 shots of whiskey during the first 10 to 15 minutes in Room #2.  Dep. of John

Kim ("Kim Dep.") at 18:17–19:2, Dkt. 76-5.  Plaintiff then ran into his CPA, Daniel Park, and

left Room #2 to socialize with Park in Room #1.  Defs.' SOF ¶ 5.  Plaintiff met defendant Young

K. Lee in Room #1.  *Id.*

     There are competing accounts of how much plaintiff drank once in Room #1.  *See* Pl.'s

SOF Opp. ¶¶ 5–6.  Plaintiff testified that he did not recall how much he drank but that he was

"pretty drunk" when he went into Room #1 and proceeded to drink "a lot," as in maybe, by

himself, "a whole bottle of…scotch and maybe five beers."  Pl.'s Dep. at 27:17–28:6, 31:3-11.

He also testified that he alternated taking shots with Lee, and, as a result, drank about the "same

amount" as Lee.  *Id.* at 31:12-22.  Lee, however, testified that plaintiff was far drunker than he

was and described plaintiff drinking straight from the bottle and even "hitting people and pulling

their hair."  Dep. of Young K. Lee ("Lee Dep.") at 18:24–19:4, 19:20–20:19, 51:18–52:16, Dkt.

76-9.  Park remembers plaintiff "appear[ing] intoxicated" but drinking only "one or two glasses"

in Room #1 and Lee looking "pretty drunk" and not being able to "walk straight."  Dep. of

SPA-4

Daniel Park ("Park Dep.") at 18:10-16, 19:13–20:3, Dkt. 76-4; *see also* Dep. of Chung K. Lee ("Chung K. Lee Dep.") at 58:15-18, Dkt. 76-7 (testifying that plaintiff "appeared drunk" in Room #1).

    At some point after plaintiff left Room #1 and was beginning to exit the karaoke bar, a disagreement or fight broke out between plaintiff and Lee.  Defs.' SOF ¶¶ 7, 13, 10[sic].[5] Plaintiff's account of the argument is based entirely on his review of surveillance video footage, as he has "no recollection of th[e] fight…anybody kicking [him] or falling down the stairs." Pl.'s Dep. at 53:10-23.  Chung K. Lee remembers someone following plaintiff out of the bar who was "cursing" and "picking [] a fight" with him.  Chung. K. Lee Dep. at 68:10-24.  Lee remembers following plaintiff out because plaintiff was cursing at him.  Lee Dep. at 27:3-6, 56:3-11.

    The parties have obtained a surveillance video recording of plaintiff's accident.  The video, which does not include any audio, depicts the following series of events.  It begins with two men—Chung K. Lee and the plaintiff—hugging and kissing goodbye on the landing at the top of the stairwell.  Video at 00:05–00:12.  As plaintiff begins to descend the stairs, with his back to the camera, three additional men appear in the frame and defendant Lee—the man in the green shirt—grabs plaintiff's jacket from behind.  *Id.* at 00:13–00:16.  Apparently in response to being grabbed by Lee, Plaintiff turns around and leans against the wall, facing Chung K. Lee and Lee.  *Id.* at 00:23–00:30.  Plaintiff has by this point stepped down from the landing and onto the first step of the stairwell with one foot, *id.* at 00:13–00:16, and remains in that position as he turns to face Lee; he does not step back onto the landing with both feet, *see id.* 00:16–1:20. Plaintiff and Lee begin exchanging some words and pointing aggressively at each other.  *Id.* at

---

[5] There are two sets of paragraphs numbered 10 through 14 in defendants' Rule 56.1 Statement.  The second set of identically numbered paragraphs is differentiated with a "[sic]," as shown here.  *See* Defs.' SOF at 3-6.

SPA-5

00:34–1:40.  Chung K. Lee puts his arm around Lee and leans in between Lee and plaintiff, seemingly trying to prevent the situation from escalating.  *Id.* at 00:45–01:10.  Plaintiff, though, then raises his middle finger at Lee and keeps it raised as Chung holds Lee's face and walks Lee away from plaintiff.  *Id.* at 01:42–02:14.  Lee pushes Chung K. Lee's hands out of his face twice and continues to push Chung K. Lee back and try to get around him and John Kim, who is also on the landing and is the second man with glasses.  *Id.* at 01:53–02:14.  Plaintiff continues to lean against the wall with his middle finger raised, one foot on the landing and one foot on the top step of the staircase.  *Id.*  Lee then raises his middle finger at the plaintiff, pushes Chung K. Lee back slightly and kicks plaintiff, immediately after which plaintiff falls down the entire flight of stairs.  *Id.* at 02:13–22; *see also* Kim Dep. at 65:3–68:3 (identifying each individual in the video frame).[6]

In his deposition testimony, Lee denied having kicked plaintiff and attributed plaintiff's fall to his intoxication, pointing out that "he [plaintiff] wasn't stable on his feet" and was "using the wall to hold himself up."  Lee Dep. at 69:21-23, 70:14-23.  Kim, however, who is standing to plaintiff's left in the video, remembered Lee kicking the plaintiff.  Specifically, Kim—who was the designated driver and had only two shots of whiskey all night—testified that "Young Lee kicked [the plaintiff]," which Kim knew because, even though Kim did not "see" the kick, he could "kind of feel it" go past his right side towards plaintiff.  Kim Dep. at 9:3-4, 15:7-8, 34:17–35:19; Defs.' SOF ¶ 10; Pl.'s SOF Opp. ¶ 10.  Chung K. Lee also indicated his understanding was that "Mr. Shin fell down the stairs because he was kicked by Mr. Lee."  Chung K. Lee Dep.

---

[6] The Owner defendants summarize the events shown in the video in their Rule 56.1 Statement.  *See* Defs.' SOF ¶ 14.  Plaintiff objects to defendants' summary of the video because it is "merely counsel's interpretation of th[e] video" and the summary "fails to cite to any portion of the record or to any evidence w[hich] would be admissible as required by Fed. R. Civ. P. 56(c)."  Pl.'s SOF Opp. ¶ 14.  The summary in the text, though, is based on the Court's own viewing of the video, which is part of the record, *see* Dkt. 76-8.

at 88:19-22; Defs.' SOF ¶ 12; Pl.'s SOF Opp. ¶ 12.  Indeed, and though it is blurry, a series of video stills at 02:16 shows Lee's leg extended toward plaintiff as plaintiff begins to fall.  *See* Appendix A; *see also* Pl.'s Dep. at 40:7-13 ("Q. Did he touch you with his foot? A. Yes. Q: Where did it make contact with you? A. I do not remember. According to the video because of that kick, I go all the way down.").

    *B.  The Premises*

    Plaintiff's accident took place in a commercial building located at 154-05 Northern Boulevard, Flushing, New York, which, at the time of plaintiff's injury, was occupied by several tenants and owned by the defendants.  Aff. of Michel Wang ("Wang Aff.") ¶ 4, Dkt. 76-17.  The karaoke bar run by YS2 was located on the second floor of the premises and the staircase where plaintiff fell runs between the first and second floors.  Defs.' SOF ¶ 11[sic].  Plaintiff argues that the landing, staircase, and lighting presented dangerous conditions that contributed to his fall and resulting injuries, relying in large part on a report prepared by his expert, Dr. William Marletta. *See* Pl.'s St. of Material Facts as to Which There Exists a Genuine Issue to be Tried ("Pl.'s SOF") ¶¶ 2–8, Dkt. 76-20 at ECF pages 13–15; Pl.'s Expert Report at 15, Dkt. 76-10.

    1.  <u>The Landing</u>

    The landing where the accident occurred is located on the second floor, and allows someone ascending the stairs either to proceed straight ahead to a second set of stairs that leads to the third floor or to turn left and enter the karaoke bar.  Defs.' SOF ¶ 11[sic]; *see also* Ex. J at 7, Dkt. 76-15.  The landing is ninety inches wide and does not have any "chairs or other areas for persons to gather or congregate."  Defs.' SOF ¶ 16; Wang Aff. ¶ 6.  Dr. Marletta determined that the width of the landing was in compliance with relevant building codes, Defs.' SOF ¶ 20, but still found that the landing width was dangerously short "for a person descending the stairway or

standing on the landing" because people were likely to congregate outside of the karaoke bar which had a maximum capacity of 200 people, Pl.'s SOF Opp. ¶¶ 20, 22; Pl.'s SOF ¶¶ 6–7.  This dangerous condition was responsible, according to Dr. Marletta, for the fact that plaintiff was forced to "stand unstably with one foot on the floor of the landing and one foot on the first step where [he] was easily pushed down the stairs."  Pl.'s SOF Opp. ¶ 7.  The Owner defendants maintain that "the video shows that plaintiff was caused to stand with one foot on the landing and one foot on the top step because he was stopped by Defendant Lee" and note that plaintiff "never testified that he was caused to stand in this position due to overcrowding on the landing." Defs.' Response to Pl.'s Rule 56.1 St. of Facts ("Defs.' SOF Opp.") ¶ 7, Dkt. 76-22.

     2.   <u>The Staircase</u>

As noted previously, plaintiff fell down the stairs leading from the second to the first floor.  Defs.' SOF ¶ 11[sic].  This set of stairs has an intermediate landing before reaching the first floor.  *Id.*; *see also* Ex. J at 2-3.  The upper half of the stairs, where plaintiff began his descent, has handrails on both sides, but the lower half of the stairs has a handrail on only one side.  *See* Ex. J at 6, 9; So Dep. at 93:13–94:3 (testifying that there were two handrails at the time of plaintiff's accident).

Plaintiff asserts that the Owner defendants were aware, or should have been aware, of the dangerous condition of the staircase because "the defects [were] visible to ordinary inspection" and because, several months before plaintiff's accident, another individual fell down the same stairs and sustained injuries.  Pl.'s SOF ¶ 2.  The facts surrounding the prior accident came out during defendant Lee's deposition; apparently Lee (in what seems to be inadmissible hearsay) was told by someone that the husband of his business partner fell from the same spot as plaintiff and was injured "quite bad[ly]."  Lee Dep. at 33:3–34:12.  However, Joshua So, the manager of

the karaoke bar for almost a year prior to plaintiff's fall, had no recollection of anyone other than plaintiff having fallen down the stairs.  *See* So Dep. at 7:7-16, 84:11-16.  The Owner defendants also point out that Lee believed that the person fell because he "mis-stepped" and apparently did not commence any lawsuit concerning the accident.  Defs.' SOF Opp. ¶ 2.

Plaintiff additionally claims that there were "repeated complaints that the elevator in the Premises was not working."  Pl.'s SOF ¶ 1.  A quick search of NYC Department of Buildings, Complaints by Address, reveals that there were about four complaints relating to the elevator in the year prior to plaintiff's accident.[7]  Defendants counter that violations relating to the elevator are "immaterial to plaintiff's claim that he tripped and fell down the stairs" and note that "there were no Department of Building violations regarding the subject stairs or landings."  Defs.' SOF Opp. ¶ 1.

### 3.  The Lighting

At the time of plaintiff's accident, the subject staircase was lit with "two overhead lights or recessed lights" directly outside the karaoke bar, a long florescent light fixture over the top half of the staircase, and fluorescent lights over the bottom half of the staircase.  Defs.' SOF ¶¶ 12[sic] –13[sic]; Pl.'s SOF Opp. ¶¶ 12[sic] –13[sic]; *see also* Ex. J at 6–9.  The lighting fixture closest to the second-floor landing "was never removed nor was the location…modified by the [Owner] defendants at any time" before plaintiff's accident.  Wang Aff. ¶ 7.  The Owner defendants never received any complaints or notices from "the Department of Buildings or any governmental entity" that the lighting fixtures violated building codes.  *Id.* ¶¶ 9–11; *see also* So Dep. at 84:17-21 (stating that, as manager of karaoke bar, he never received any complaints about the lighting conditions in the stairwell prior to plaintiff's accident).

---

[7] A history of complaints recorded by the NYC Department of Buildings concerning this location may be found at this link: http://a810-bisweb.nyc.gov/bisweb/ComplaintsByAddressServlet?requestid=1&allbin=4119174.

Dr. Marletta, however, concluded that the lighting on the landing and in the stairwell violated the New York City Building Code for "public places of assembly" and was a "contributing factor" to plaintiff's fall.  Pl.'s SOF Opp. ¶¶ 20, 22; Pl.'s SOF ¶ 4.  "Public places of assembly" are defined under New York law as "assembly halls maintained or leased for pecuniary gain where one hundred or more persons may assemble for amusement or recreation."  Pl.'s SOF ¶ 3; Pl.'s Expert Report at 7 (citing N.Y. Lab. Law § 2).  The Owner defendants dispute that the lighting was in violation of any building code on the basis that the landing was "a means of ingress and egress" and not of public assembly.  Defs.' SOF Opp. ¶ 3.

Plaintiff and the other witnesses offer differing accounts of the level of illumination in the stairwell.  The lighting in the video does not look particularly dim.  *See* Video.  Plaintiff did, however, testify that the stairwell was "dark," though he seemed to rely on his viewing of the video rather than any recollection of the night of his accident.  *See* Pl.'s Dep. at 40:11-14.  Chung K. Lee remembered the lighting being darker than the video reflected and stated that the staircase was "never bright enough," but also testified that it was bright enough on the night of the accident to "see people's faces" and that he "th[ought] that [he would be] able to see [his] hand."  Chung K. Lee Dep. at 86:3–87:25.  *But see* Pl.'s SOF Opp. ¶ 11 (suggesting that Chung K. Lee did not understand this series of questions).  In contrast, Park stated that the lighting was "normal…not too dark, [] not too bright" when he left the karaoke bar at around two in the morning after plaintiff's accident.  Park Dep. at 76:7-15.  So also remembered the lighting at the top of the staircase being "pretty bright."  So Dep. at 85:4-17.

SPA-10

### DISCUSSION

### I.      Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether an issue of fact is material is determined by the applicable substantive law. *Anderson*, 477 U.S. at 248. A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If a moving party makes the showing required by Rule 56, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. *Id.* "When evaluating the record to determine whether summary judgment is appropriate, [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Mizrahi v. City of New York*, 2018 WL 3848917, at *5 (E.D.N.Y. Aug. 13, 2018) (internal quotation marks and citation omitted). However, "the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant." *Powell v. Nat'l Bd. of Med. Exam.*, 364 F.3d 79, 84 (2d Cir. 2004). Thus, "[i]n essence … the [court's] inquiry is … whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

"In assessing whether summary judgment is appropriate, the court considers 'the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits.'" *Deykina v. Chattin*, 2014 WL 4628692, at *2 (E.D.N.Y. Sept. 15, 2014) (quoting *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir.

SPA-11

2011).  Video evidence may also "be considered and carefully reviewed, [though] summary judgment is appropriate only where the video evidence in the record is sufficient to blatantly contradict one party's versions of events."  *Fana v. City of New York*, 2018 WL 1581680, at *6 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks and alterations omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Wiles v. City of New York*, 2016 WL 6238609, at *3 (S.D.N.Y. Oct. 25, 2016), *aff'd*, 724 F. App'x 52 (2d Cir. 2018) ("When the parties disagree as to the existence of a genuine dispute of a material fact, the Court may consult incontrovertible video evidence to determine whether summary judgment is nevertheless appropriate.").

## II.    Liability

Because the Court's jurisdiction in this case is based on the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332, the substantive law of New York governs.  *Cousin v. White Castle Sys., Inc.,* 2009 WL 1955555, at *6 n. 3 (E.D.N.Y. July 6, 2009); *see* Compl. ¶¶ 3–15.  "In New York, the elements of a negligence claim are: (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty, and (3) injury substantially caused by that breach."  *Vasquez v. United States*, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016).  When asserting a negligence claim against a landowner for injuries sustained on his or her property, "the plaintiff must demonstrate that the landowner controls the property, that a defect exists, and that the defect cause[d] the plaintiff's injuries."  *Deykina*, 2014 WL 4628692, at *5.

New York courts impose a burden-shifting framework on these elements when a defendant moves for summary judgment; specifically, "a defendant property owner or entity responsible for maintaining the premises has the initial burden of making a prima facie showing that it neither created the hazardous condition nor had actual or constructive notice of its existence."  *Dolishnya v. Costco Wholesale Corp.*, 2017 WL 1207520, at *3 (E.D.N.Y. Mar. 31,

11

2017); *see also Pryzywalny v. New York City Transit Auth.*, 69 A.D.3d 598, 599 (2d Dep't 2010).[8]  However, because the "burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive," federal and not state law governs.  *Tingling v. Great Atl. & Pac. Tea Co.*, 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  Under federal law, where the nonmovant will bear the ultimate burden of proof at trial, a moving party may demonstrate that it is entitled to summary judgment by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim."  *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  Accordingly, the Owner defendants may obtain summary judgment by demonstrating an absence of evidence as to any of the substantive elements of a New York negligence claim.  *See Dolishnya*, 2017 WL 1207520, at *3 ("[T]he court may grant summary judgment if there is no evidence establishing a genuine issue for trial as to causation, actual notice or constructive notice").

Here, the parties do not dispute that the Owner defendants controlled the premises and therefore owed a duty of care to the plaintiff to maintain the stairwell in a safe condition.  *See Smith v. New York Enter. Am., Inc.*, 2008 WL 2810182, at *4 (S.D.N.Y. July 21, 2008)

---

[8] This burden arises in particular when a defendant moving for summary judgment asserts that it neither created nor had actual or constructive notice of the allegedly dangerous condition, as the Owner defendants do here.  *See, e.g.*, *Hanney v. White Plains Galleria, LP*, 157 A.D.3d 660, 661 (2d Dep't 2018).  However, when a defendant moves for summary judgment on a different basis, such as an absence of proximate cause—which the Owner defendants also do in the second half of their brief—the burden is not as clearly defined under New York law and, it seems, may be satisfied by demonstrating that plaintiff has failed to establish proximate cause.  *See, e.g.*, *Daniarov v. New York City Transit Auth.*, 62 A.D.3d 480, 481 (1st Dep't 2009) ("Defendant established its prima facie entitlement to judgment as a matter of law by submitting evidence including, inter alia, plaintiff's testimony that although there was no handrail to break her fall, she did not know how she fell or what caused her to slip.").

("[L]andowners and business proprietors have a duty to maintain their properties in reasonably

safe condition.").  Rather, the two issues raised by the parties are 1) whether the Owner

defendants breached their duty by failing to maintain the premises in a reasonably safe condition;

and 2) whether any breach of duty on the part of the Owner defendants was the proximate cause

of plaintiff's injuries.  For the reasons explained below, I conclude that plaintiff has failed to

present evidence raising triable issues of fact as to either of these issues, and that the Owner

defendants are entitled to summary judgment.

   A.  Breach of Duty

   "[T]o establish a prima facie case of negligence against a landowner where an alleged

dangerous condition on the land causes an injury, the plaintiff must demonstrate that the

landowner created the condition that caused the injury, or that the landowner had actual or

constructive notice of the condition."  *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188,

192 (S.D.N.Y. 2004).  Here, plaintiff identifies three dangerous conditions that led to his fall:

"the substandard lighting, the inadequately short width top short-landing, and the lack of crowd

control."  Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 19, Dkt. 76-

21.  Defendants assert that they neither created these conditions nor had actual or constructive

notice of them and therefore did not breach their duty to maintain the premises in a safe

condition.  *See* Defs.' Mem. at 4–6.[9]

---

[9] In response to plaintiff's argument that a lack of crowd control contributed to plaintiff's accident, defendants
further argue that plaintiff never alleged that the Owner defendants "were responsible for crowd control of patrons
from the Karaoke Bar."  Defs.' SOF Opp. ¶ 8.  In fact, plaintiff does allege that both YS2 and the Owner defendants
"failed…to monitor[] the conduct of patrons" in the area where plaintiff was injured.  *See* Compl. ¶ 34.  It does,
however, seem that controlling a tenant's patrons may exceed the scope of a landowner's duty to maintain the
*conditions* of a premises in a reasonably safe manner.  *See Galindo v. Town of Clarkstown*, 2 N.Y.3d 633, 636
(2004) ("It is well settled that a landowner has a duty to exercise reasonable care in maintaining his own property in
a reasonably safe condition under the circumstances.").  Nonetheless, because plaintiff fails to raise any triable
issues of fact as to whether defendants had notice of crowd control problems or whether a lack crowd control caused
plaintiff's fall (as explained in more detail in the next section), I assume without deciding that the Owner defendants
had a duty to implement "crowd control" measures.

"To establish that a defendant created a hazard, a plaintiff must show [that] the creation was an affirmative, deliberate and intentional act by defendant." *Cousin*, 2009 WL 1955555, at *6 (internal quotation marks omitted). "A plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Vasquez*, 2016 WL 315879, at *7.

Here, plaintiff claims that defendants created the "lack of crowd control conditions" because they did not impose controls themselves or require YS2 to manage their patrons. Pl.'s Mem. at 19. Plaintiff, however, puts forth no evidence suggesting that the purported dangerously crowded conditions in the stairwell were the result of any "affirmative act" by defendants. Indeed, defendants offer sworn testimony that they did not place any chairs or benches on the landing inviting patrons to congregate there. *See* Wang Aff. ¶ 6; *see also* Dep. of William Marletta ("Pl.'s Expert Dep.") at 66:4–67:10, Dkt. 76-16. To the extent plaintiff suggests that the lighting conditions were created by defendants, this claim also fails; the light fixture at the top of the stairs was, according to defendant Wang, never modified by the Owner defendants and plaintiff does not offer any evidence to the contrary. Wang Aff. ¶ 7; *see Deykina*, 2014 WL 4628692, at *7 ("Here, defendant did not create the condition, since he testified that the stairs already existed on the property when he purchased the house in 2007 and that he did not alter them in any way.").

Plaintiff contends in the alternative that defendants had actual and constructive notice of the dangerous conditions at the premises. Pl.'s Mem. at 19–21. To demonstrate actual notice, "plaintiff must present proof that defendants were, in fact, aware of the dangerous condition." *Ghali v. Wal-Mart Stores E., LP*, 2019 WL 1745704, at *6 (S.D.N.Y. Apr. 18, 2019). For example, in *Caruso v. United States*, 2002 WL 31870571, at *3 (N.D.N.Y. Dec. 23, 2002), the

14

court held that defendant had actual notice of dangerous depressions in the treads in its stairway because the depressions were "visible and apparent," at least two patrons had complained about that unevenness, and at least one employee had alerted management.  New York law attributes constructive notice to a to a landlord who has "notice of the dangerous conditions which a reasonable inspection would have discovered."  *Williams v. Matrix Fin. Servs. Corp.*, 158 F. App'x 301, 303 (2d Cir. 2005) (quoting *Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Assocs.*, 296 A.D.2d 176, 181 (3d Dep't 2002)).

Plaintiff makes several arguments in support of his claim that defendants had both actual and constructive notice of the dangerous conditions, all of which fail to raise a triable issue of fact.  First, plaintiff argues that a prior accident, which according to the testimony of defendant Lee, occurred several months prior to plaintiff's fall when someone "mis-stepped" and fell down the subject staircase, Lee Dep. at 33:3–34:22, establishes that defendants had actual, or at least constructive, notice, that the stairwell was dangerous.  *See* Pl.'s Mem. at 20.  Though prior similar accidents may establish notice, *see, e.g., Servelli v. Cty. of Westchester*, 113 A.D.3d 832, 833 (2d Dep't 2014), Lee's vague account of this accident fails to suggest that it was similar to plaintiff's or that it should have alerted defendants to any of the dangerous conditions that plaintiff identifies.  More specifically, plaintiff fails to point to any evidence indicating that the man who fell in the earlier accident did so because of any purportedly dangerous condition; to the contrary, Lee testified that the prior accident victim "acknowledged that it [the accident] was his own fault."  Lee Dep. at 34:21-22.  In any event, Lee's account of this earlier accident is not evidence that may be considered in opposition to defendants' motion because Lee was not present for the accident but was merely "told that [] th[e] person had fallen," Lee Dep. 33:10-14, and Lee's testimony regarding the accident is therefore inadmissible hearsay.  *See Schweit v. City*

*of New York*, 2007 WL 1133440, at *7 (E.D.N.Y. Apr. 17, 2007) ("[I]nadmissible hearsay [] may not be relied upon to defeat a summary judgment motion."); *Salazar v. City of New York*, 104 A.D.3d 931, 932 (2d Dep't 2013) ("Hearsay evidence alone is insufficient to raise a triable issue of fact as to notice of a dangerous condition.").

Plaintiff next argues that defendants had notice of the dangerous conditions because, during the decade prior to his accident, the "Premises were the subject of numerous complaints and violations as compiled by the New York City Department of Buildings." Pl.'s Mem. at 13, 21.  A history of building code violations may provide some evidence of negligence, and violations or complaints would surely indicate notice.  To provide notice, however, the building code violations and complaints must have some connection to the defect or defects alleged to have caused a plaintiff's accident.  *See Travelers Indem. Co. of Illinois v. 28 E. 70th St. Const. Co.*, 296 F. Supp. 2d 476, 487–88 (S.D.N.Y. 2003); *Plowden v. Stevens Partners, LLC*, 45 A.D.3d 659, 660 (2d Dep't 2007) ("Even assuming the applicable Building Code was violated, the plaintiff failed to present any evidence connecting the absence of handrails to her fall").  Here, plaintiff fails to connect the claimed dangerous conditions with any of the violations or complaints issued to defendants by the Department of Buildings.  The only specific complaint plaintiff identifies in his brief relates to the functioning of the building's elevator, which would not have alerted defendants to defects in the stairwell.  Pl.'s Mem. at 21.  Plaintiff's suggestion that problems with the elevator on the night of his accident forced plaintiff "and all other liquor-consuming customers of the Karaoke Bar to use the stairs to exit the [] bar," *see id.* at 14, fails to make these building complaints any more relevant.  *See Bank v. Lincoln Shore Owners, Inc.*, 229 A.D.2d 370 (2d Dep't 1996) (holding "as a matter of law [that] failure to have the elevator in operation was not a proximate cause" of plaintiff's accident on the stairs).

16

Finally, plaintiff contends that the dangerous conditions, and in particular the limited size of the landing, "could not have been unnoticed by the [defendants] by the time of the accident, several years after they purchased the building." Pl.'s Mem. at 19. To be sure, both the size of the landing and the degree of illumination provided by the lighting fixtures in the stairwell were plainly visible to the naked eye, and defendants therefore arguably had constructive notice of these features of the stairwell. *See Caruso*, 2002 WL 31870571, at *3. The key issue, though, is whether *any alleged defect or dangerous characteristic* of the landing or lighting would have been apparent to defendants. *Compare Deykina*, 2014 WL 4628692, at *8 (noting that "[c]ourts have declined to impute constructive notice to defendants where the allegedly defective conditions deviate from accepted practices by relatively small dimensions that could only be detected through structural analysis" but denying summary judgment for defendants because the stairs where plaintiff was injured lacked a guardrail on the right side, which was "clearly visible and apparent to any observer and d[id] not require any type of structural analysis to discover") *with McHale v. Westcott*, 893 F. Supp. 143, 149 (N.D.N.Y. 1995) (concluding that defendants lacked constructive notice that "the stairs' riser heights varied by more than one-eighth of an inch" because "the only way defendants could have discovered the defect was by undertaking a structural analysis" and "plaintiffs did not allege any fact or occurrence that would have alerted defendants to the need for such analysis").

Here, although the level of illumination and size of the landing were plain to see, that they were dangerous or defective—if indeed they were either—was not. Dr. Marletta concluded that the lighting was too dim based on close measurements and a relatively minor deviation from the standard he determined to be applicable. *See, e.g.*, Pl.'s Expert Report at 7 (concluding that the lighting was deficient because it measured at 3.36 foot candles and not the 5 foot candles

17

required in places of public assembly, while also noting that 2 foot candles are adequate for

general construction).  Moreover, this Court's review of the video and pictures suggests that the

stairwell was well-illuminated, particularly when descending the stairs as plaintiff was.  *See* Ex. J

at 6–8.  Although Dr. Marletta also concluded that the top landing was dangerously "cramped,"

he provides no measurement or standard according to which he reaches this conclusion; it is

therefore not possible to know how much larger the landing would have to be to address Dr.

Marletta's concern, or whether the difference would be discernible to the untrained naked eye.

Pl.'s Expert Report at 10-11.  That defendants received no complaints about these conditions by

tenants or patrons throughout years of ownership further suggests that they lacked actual or

constructive notice.  *See* Wang Aff. ¶¶ 9–11; So Dep. at 84:6-21.

>    For the reasons stated above, I conclude that plaintiff has failed to raise a triable issue of

fact with respect to whether defendants created or had actual or constructive notice of any

dangerous condition in the stairwell.

>    *B.  Proximate Cause*

>    Even if plaintiff had raised a triable issue of fact concerning notice of a dangerous

condition, defendants would be entitled to summary judgment because plaintiff has failed to

present any evidence that the purported defects were the proximate cause of his injuries.  "The

test for proximate cause is whether the defendant's actions or failure to act was a substantial

factor in the sequence of causation and whether the injury [was] reasonably foreseeable or

anticipated as a natural consequence of the defendant's actions."  *Caruso*, 2002 WL 31870571,

at *3 (internal quotation marks omitted).  "Although it is ordinarily for the trier of fact to

determine legal cause, where only one conclusion may be drawn from the established facts the

question of legal cause may be decided as a matter of law." *Touri v. Zhagui*, 2010 WL 779335, at *3 (S.D.N.Y. Mar. 5, 2010) (internal quotations marks omitted).

Summary judgment for defendants may also be appropriate when a plaintiff is unable to identify the cause of his or her fall, "since, in that instance, the trier of fact would be required to base a finding of proximate cause upon nothing more than speculation." *Deykina*, 2014 WL 4628692, at *9; *Van Auken v. Adamkiewicz*, 2009 WL 1437586, at *4 (N.D.N.Y. May 19, 2009) (explaining that defendant's "showing that there is no causal connection between the defects proffered and the plaintiff's injury" entitles him to summary judgment and "cannot be defeated by a plaintiff's 'sheer speculation' as to a causal relationship"). "[E]ven if the plaintiff suffers memory loss as a consequence of [his injuries], he still must present a theory of liability and facts in support thereof on which the jury can base a verdict" that is not based on "only speculation and guessing." *Kane v. Estia Greek Rest., Inc.*, 4 A.D.3d 189, 190 (1st Dep't 2004).  Failure to do so, particularly when the plaintiff's intoxication or distraction provides an alternate theory of causation, may warrant summary judgment in defendant's favor.  *See Visone v. Third & Twenty Eight LLC*, 184 A.D.3d 543, 543 (1st Dep't 2020) ("[P]laintiff's inability to identify the cause of his fall is fatal to this action, as it is at least as likely, if not more so under the circumstances of this case, that his accident was caused by his own voluntary intoxication following a day of participating in 'SantaCon,' as it was the result of defendants' negligence in maintaining its premises."); *McNally v. Sabban*, 32 A.D.3d 340, 342  (1st Dep't 2006) (granting summary judgment for defendants in case involving fall in stairwell where there was "no evidence of record that any of the alleged code violations caused plaintiff's fall," plaintiff had "no recollection of how the accident occurred," and plaintiff's intoxication "may well be the principal cause of his harm and renders the alleged defects of the stairway too remote to

**SPA-20**

constitute a proximate cause of his injuries"); *Saul v. 700 Milford Holdings, LLC*, 2018 WL

3109659, at *4 (N.Y. Sup. Ct. June 25, 2018) (granting summary judgment for defendants

because surveillance footage showed the plaintiff looking at her phone as she walked down the

stairs and when she overstepped the last step and thus, even if a central handrail had been

installed as plaintiff claimed there should have been, plaintiff still would have tripped).

      Here, plaintiff has no recollection of his accident.  It is also undisputed that plaintiff had

an enormous amount of alcohol before his accident and was inebriated at the time he fell.

Because he has no memory of his accident and cannot testify about what caused him to fall down

the stairs, plaintiff is left to rely on the video recording of the events leading to his accident.  The

video recording demonstrates, however, that even if the stairwell had the dangerous defects

plaintiff asserts it did, those defects were not proximate causes of his accident.

      The video footage unequivocally shows that plaintiff fell because defendant Lee kicked

him and not because the landing was too small or the lighting too dim.  Even plaintiff's expert

acknowledges that Lee's kick was the immediate cause of plaintiff's accident.  Pl.'s Expert Dep.

at 82:7-14 (agreeing that the video "shows that [plaintiff] was kicked" and that "immediately

after Mr. Lee's foot makes contact with Mr. Shin, he starts falling down the staircase").  Plaintiff

himself, as well as Kim and Chung K. Lee, also testified that plaintiff fell when he was kicked.

Pl's Dep. at 40:1-3; Kim Dep. at 34:17–35:19; Chung K. Lee Dep. at 88:8-22.

      While plaintiff acknowledges that Lee's kick was a cause of his fall, he contends that the

dim lighting, cramped landing, and lack of crowd control were contributing causal factors as

well.  *See* Pl.'s SOF Opp. at ¶¶ 10, 22–23; Pl.'s Mem. at 22–24.  As a general proposition,

plaintiff's contention that Lee's kick does not preclude a finding against the Owner defendants is

correct; "[t]he mere fact that other persons share some responsibility for plaintiff's harm does not

absolve defendant from liability because there may be more than one proximate cause of an injury." *Hain v. Jamison*, 28 N.Y.3d 524, 529 (2016) (internal quotation marks omitted).  Here, however, no reasonable finder of fact who viewed the video recording of plaintiff's accident could conclude that the defects in the stairwell alleged by plaintiff played a role in causing his fall.

Plaintiff stresses that at the time he was kicked, he was standing with one foot on the first step leading downstairs and the other on the landing.  But it is beyond dispute that plaintiff was not in this posture because the landing was too crowded or too small; plaintiff had started walking down the stairs well before Lee kicked him because he was on his way out of the building, and not because he needed to get out of the way of others crowding the landing.  *See* Video at 00:12–14; Pl.'s Expert Dep. at 74:21-25.  When Lee grabbed him from behind, plaintiff simply remained where he already was, with one foot on the stair and one on the landing.  *See* Video at 00:14–30; Pl.'s Expert Dep. at 75:1-15.  Indeed, the video shows that there was additional space on the floor of the landing where Lee and the others could have moved to if members of the group had preferred to be further apart or if plaintiff attempted to rejoin them with both feet on the landing.  *See* Video at 1:40–2:22 (showing that Chung K. Lee and Lee had room to move around easily as they talked); Appendix B; Kim Dep. at 35:17-19.  Nor is there any evidence or logical reason to think that plaintiff would have been better able to withstand being kicked without falling if he had both feet on the landing.  In short, it is plain from the video recording that Shin fell because he was kicked and not because crowded conditions on the stairwell led to him being inadvertently pushed or shoved or forced to take a position with one foot on the landing and another on a step that rendered him unsteady.[10]

---

[10] Dr. Marletta's assertion that plaintiff came to be standing on the edge of the stairs because "the short-landing at the top of the stairs was too small for its purpose," Pl.'s Mem. at 15, fails to raise a question of fact because the

**SPA-22**

The level of illumination likewise had no bearing on plaintiff's accident.  The back of plaintiff's head was to the stairs when he was kicked, and his descent was too rapid for him to have broken his fall before he came to rest on the intermediate landing.  Video at 2:11–22.  Thus, it is clear that he did not trip on the stairs or fail to regain his footing because he could not see the steps or handrail; he was not looking in the direction of the steps or handrail when he began his descent, and lack of illumination is not the reason he could not reach out to break his fall.  *See Outlaw v. Citibank, N.A.*, 35 A.D.3d 564, 565 (2d Dep't 2006) (finding that insufficient lighting was not a proximate cause of plaintiff's fall because plaintiff testified that she was not looking towards where the alleged defect was located when she fell).  Indeed, plaintiff was so clearly intoxicated, as demonstrated by his leaning against the wall, that he was undoubtedly too unsteady to catch himself after Lee's kick no matter how bright the lighting around him was.  *See* Video at 2:16–18.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is granted, and all claims and cross-claims pending against them are dismissed.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
December 16, 2020

*U:\#ECC 2019-2020\17-cv-5183 Shin v. YS2\17-cv-5183 Shin v. YS2 SJ FINAL.docx*

---

video footage "blatantly contradict[s]" this contention.  *Scott*, 550 U.S. at 380.  *See also Buchholz v. Trump 767 Fifth Ave., LLC*, 5 N.Y.3d 1, 9 (2005) ("Where the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation ... the opinion should be given no probative force and is insufficient to withstand summary judgment.").

SPA-23

**Appendix A**







**SPA-24**

| Appendix B |
|---|





